**William Earl BAYSDEN, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**Crim. No. 7163.**

United States District Court
E. D. North Carolina,
New Bern Division.

Jan. 8, 1963.

William Earl Baysden, pro se.

Robert H. Cowen, U. S. Atty., Raleigh, N. C., for respondent.

LARKINS, District Judge.

The Petitioner, William Earl Baysden, has filed a petition under Title 28, U.S.C. § 2255 for vacation or modification of a sentence imposed by this Court at the May, 1962 term of court in the New Bern Division, Eastern District of North Carolina. Petitioner Baysden and four co-defendants were charged in a five count indictment with:

(1) Conspiring to commit an offense against the United States, in violation of Title 18, U.S.C., § 371;

(2) Falsely making or counterfeiting obligations or securities of the United States, in violation of Title 18, U.S.C. § 471;

(3) Possessing, without authority, obligations or securities falsely issued under the authority of the United States, knowingly, wilfully and with intent to sell or otherwise use same, in violation of Title 18, U.S.C., § 474;

(4) Possessing, passing and uttering falsely made, forged and counterfeited obligations or securities of the United States, in violation of Title 18, U.S.C., § 472;

(5) Possessing, without authority, obligations or securities falsely issued under the authority of the United States, knowingly, wilfully and with intent to sell or otherwise use same, in violation of Title 18, U.S.C., § 474,

Petitioner Baysden was also charged, in a one count indictment, in criminal case No. 7164, with conspiring to commit an offense against the United States, in violation of Title 18, U.S.C., § 371.

Petitioner Baysden pleaded guilty to all five counts in the first indictment. The Court committed him to the custody of the Attorney General for imprisonment for a total of fifteen (15) years and imposed a total of $15,000.00 in fines upon the defendant. Petitioner pleaded nolo contendere to the count in the second indictment and the Court committed the defendant to the custody of the Attorney General for imprisonment for a period of five (5) years, the sentence to run concurrently with the sentence imposed upon the counts in the first bill of indictment.

The petitioner has set forth three alleged errors in the trial of his case. The Court will discuss each in order as they appear in the petition:

## I.

■ The petitioner alleges that he has been denied Equal Protection of the Laws and Due Process of Law as guaranteed to him by the Fourteenth Amendment of the Constitution of the United States. Specifically, he contends that the Court arbitrarily discriminated against him by imposing a more severe sentence on him than was imposed on his co-defendants.

It should be noted, at the outset, that the Court did not impose the maximum sentence on the petitioner. The Court could have imposed sentences totalling sixty-five (65) years imprisonment, and could have imposed fines totalling $30,-000.00 in the first case. In the second case, No. 7164, the Court could have imposed a sentence of five (5) years imprisonment, and a maximum fine of $10,-000.00. Consequently, the sentence of fifteen (15) years imprisonment imposed upon the petitioner was less than one-fourth of the maximum sentence of imprisonment that the Court could have imposed. Also, the petitioner's co-defendants were not charged, and did not plead guilty to all five counts in criminal case No. 7163. Defendant Edward Derwood Sparrow pleaded guilty to counts 1 and 2 and received a prison sentence of seven and one-half (7½) years. Defendant Norwood Whaley pleaded guilty to counts 1, 2, and 3 and received a prison sentence of five (5) years. Defendant Edward W. Thorpe pleaded guilty to counts 1 and 2 and received a prison sentence of seven and one-half (7½) years.

The Court heard evidence on the petitioner's plea of guilty and imposed punishment, which, in its opinion, was commensurate with the crimes charged and for which defendant was convicted. The petitioner received less than one-fourth of the maximum sentences and the Court is of the opinion that the punishment was not unreasonable. Also, the petitioner was found guilty on more counts than were his co-defendants and this Court does not believe that any discrimination was shown. In fact, a comparison of the sentences imposed will conclusively show that the petitioner was given favorable consideration and treatment.

In enacting the criminal statutes, Congress has invested the District Courts with discretion in passing judgment on a defendant. The Court may impose long or short sentences, as the circumstances may warrant. Frequently situations arise where the Court exercises its discretion in imposing more severe punishment on one co-defendant than on another. However, this should only be done after carefully considering the evidence in the case. The Court should then impose punishment commensurate with each defendant's participation in the crime. The Court in United States v. Pendergast, 28 F.Supp. 601 (W.D.Mo.1939), held that a judge in sentencing a defendant on a plea of guilty has discretion to make the sentence small or great in accordance with the mitigating or aggravating circumstances of the crime.

In Livers v. U. S., 185 F.2d 807 (6th Cir., 1950), the petitioner pleaded guilty to kidnapping for which he could have received a death sentence. Instead, he received a sentence of seventy-five (75) years imprisonment. The petitioner complained of the severity of the sentence and the Court of Appeals for the Sixth Circuit had the following to say:

"* * * The function of the United States District Courts is to impose, in the exercise of their discretion within the limits of the federal statutes, just and lawful punishment for violations of federal law. In the enactment of our national laws against crime, the Congress has vested United States District Judges with wide discretion in assessing punishment within the limits of the various federal statutes. The exercise of that discretion will not be disturbed on appeal, except upon a plain showing of gross abuse." Id. at 809.

In Bell v. U. S., 100 F.2d 474 (5th Cir., 1938), the defendant was charged with passing worthless bank notes. He was given a prison sentence of ten (10) years and he contended that the punishment was too severe. The Court of Appeals held that a sentence within the limits of the statute is in the discretion of the trial judge and cannot be changed by the Appellate Court.

The point raised by the petitioner was considered by the Court of Appeals for the Eighth Circuit in the case of Egan v. United States of America, 268 F.2d 820 (8th Cir., 1959). In that case petitioner Egan and three co-defendants were charged with kidnapping and interstate transportation of the kidnapped person, in violation of Title 18, U.S.C., § 408a, now Title 18, U.S.C., § 1201. The petitioner and his three co-defendants pleaded guilty to the charge. The petitioner, in that case, received a sentence of life imprisonment while his co-defendants received prison terms ranging from fifteen (15) to twenty-five (25) years. The petitioner Egan filed a petition under Title 28, U.S.C., § 2255 to vacate the sentence. He contended, inter alia, that his sentence violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, since he was given a more severe sentence than his co-defendants for the same offense. The Court stated that:

> "When a judge imposes a sentence authorized by a statute of the United States, he commits no error of law, and neither the District Court nor this Court can concern itself with the reasonableness of the sentence." Id. at 823.

The Court is of the opinion that there was no gross abuse of discretion in passing judgment on the petitioner and his co-defendants. The Court is also of the opinion that the punishment meted out in the case was commensurate with the principal's participation in the crime.

## II.

The petitioner next complains about the language used in the judgment.

His contention is that the sentences imposed upon the various counts should run concurrently and not consecutively. In case No. 7163 the Court sentenced petitioner to five (5) years imprisonment and imposed a $10,000.00 fine on the first count. On count two the Court sentenced petitioner to a term of five (5) years imprisonment and imposed a fine of $5,000.00, the prison sentence to run consecutively with the sentence imposed in count one. On count three the Court sentenced petitioner to a term of five (5) years imprisonment, to run consecutively with the sentence imposed on count two. On counts four and five the Court sentenced petitioner to a term of five years imprisonment on each count, the sentences to run concurrently with the sentences imposed on the first three counts. In case No. 7164 the Court sentenced petitioner to a term of imprisonment of five (5) years, to run concurrently with the sentences imposed on the first three counts in case No. 7163.

Petitioner's contention is that the words "consecutively with" means "concurrently with" and that the total sentence of fifteen (15) years imposed is illegal. He contends that when the Court used the terms "consecutively with" it was identical to saying "concurrently with" and that his total sentence of imprisonment should be only five (5) years.

In his petition filed with this Court, the petitioner states that the United States Supreme Court has held that use of the words "consecutive with" shall be construed as running together. The petition, obviously prepared by one with legal training, does not cite any authority for the statement; and, the Court, after an exhaustive study, was unable to find any authority to this effect in support of said statement.

On the other hand, the problem presented by Baysden's petition is not novel. It has been before the Courts on many occasions and the authorities appear to be to the contrary as contended by petitioner. A case often cited in this respect is Hiatt v. Ellis, 192 F.2d 119 (5th Cir., 1951). The Court held that where the

sentence for the first offense was for two (2) years imprisonment, and the sentence for the second offense provided for two (2) years imprisonment, and the imprisonment for the second offense was to run "consecutively with" the sentence imposed for the first offense, the sentences were "consecutive" and not "concurrent".

In United States v. Drake, 274 F.2d 611 (7th Cir., 1960), certiorari denied 362 U.S. 981, 80 S.Ct. 1068, 4 L.Ed.2d 1016 (1960), the Court of Appeals for the Seventh Circuit held that under the provisions of a written judgment to the effect that a sentence in one case was to be served consecutively with a sentence in another case, use of the words "consecutive with" instead of "consecutive to" did not make the written judgment ambiguous. To the same effect is the case of Toyer v. United States, 291 F.2d 925 (8th Cir., 1961). In Toyer the Court had the following to say about consecutive sentences:

> "We have held in a corresponding situation that 'the use of the expression "to run consecutively with" could [not] reasonably be regarded as having any other natural or contextual meaning in the situation then "consecutive to" ' ". Id. at 926.

In Martin v. United States, 285 F.2d 150 (10th Cir., 1960), the Court imposed a sentence of five (5) years on "each two counts of the indictment * * *," and ordered the sentences to run "consecutively (total ten years), and said sentences shall run consecutively with the sentence defendant is now serving * *." The Court of Appeals for the Tenth Circuit held that it would be difficult to choose better words to show that the sentences were to be served consecutively.

█ The cases discussed above clearly, and conclusively, show that the weight of authority is contra to the position advocated by petitioner. Consequently, his contention on this ground must be rejected.

## III.

Petitioner Baysden's third ground of complaint is:

(1) That he did not have counsel in the trial of his case;

(2) That he did not fully understand the maximum penalties that the Court could impose when he changed his plea from not guilty to guilty;

(3) That the Court did not determine if any promises had been made to him in return for his plea of guilty; and

(4) That he was not given the right of allocution.

The Court ordered a transcript of the trial prepared by the Court Reporter. Reference is made to the transcript in considering the petitioner's third contention.

The trial record, at page 3, reveals the following exchanges at the arraignment:

> "COURT: Very well. Let's proceed with the arraignment.
>
> "MR. COWEN *: Calling William Earl Baysden, Edward Derwood Sparrow, Norwood Whaley, Edward W. Thorpe, Clinnie Humphrey.
>
> "COURT: Is this 7163.
>
> "MR. COWEN: Yes, sir. A New Bern Division case, sir. I believe all of the defendants have been furnished copies of the indictment. And Mr. Baysden is represented by Mr. Summersill. Mr. Humphrey is represented by Mr. Jesse Jones. The other three defendants do not have counsel, sir.
>
> "COURT: Very well. Now, let the Court identify the defendants. Which is William Earl Baysden. Stand up please. Mr. Baysden, how old are you?
>
> "MR. BAYSDEN: Forty-four.
>
> "COURT: And where is your home, please, sir.
>
> "MR. BAYSDEN: Jacksonville.

---

* United States Attorney for the Eastern District of North Carolina.

"COURT: Jacksonville. Very well. Be seated. Let me ask you though. Does Mr. E. W. Summersill represent you?

"MR. BAYSDEN: Yes, sir."

As the above record indicates, the petitioner was represented by counsel of his own choice, at both the arraignment and trial. Mr. E. W. Summersill is an outstanding member of the Jacksonville, North Carolina Bar, and well known throughout Eastern North Carolina for his ability in the practice of law.

Consequently, this contention is dismissed as being without merit.

The petitioner next complains that he did not fully understand the charges and the penalties that could be imposed. Reference to the trial record clearly shows that the Court explained each count to the petitioner. The Court also informed the petitioner of the maximum penalty involved. Page 4 of the trial record reveals the following conversation between the Court, Mr. Baysden, and his attorney, Mr. E. W. Summersill:

"COURT: Mr. Summersill, what—have you been furnished a copy of the criminal information?

"MR. SUMMERSILL: If the Court please, I have.

"COURT: And have you had an opportunity to discuss it with your client, Mr. Baysden?

"MR. SUMMERSILL: I have.

"COURT: Have you advised him of the possible penalties that might be imposed. There are five counts, I believe.

"MR. SUMMERSILL: I have.

"COURT: And he is familiar with the possible penalties that might be imposed?

"MR. SUMMERSILL: He is. And in addition to that I have furnished him a copy of it from my file of the indictment.

"COURT: Very well. Is he ready to plead?

"MR. SUMMERSILL: He is."

(At this point the defendant pleaded guilty to each of the counts in the five count bill of indictment.)

"COURT: Mr. Baysden, you do understand the nature and extent of the charges imposed against you and the possible penalties.

"MR. BAYSDEN: I think I do, sir.

"COURT: Well, is there any question in your mind about it? If so the Court would like to be certain of that. Mr. Summersill says he has gone over the indictment with you and also all of the possible penalties that may be imposed.

"MR. SUMMERSILL: I wish you would relate them to him too, if the Court please.

"COURT: All right, sir. On the first count in which you and all the other defendants are charged with conspiracy to commit an offense against the United States in violation of Title 18, U.S.Code, Section 371, the possible penalties, that is the maximum possible penalties that may be imposed by the Court is a fine of not more than $10,000.00 or imprisoned not more than 5 years, or both.

"The second count in which Baysden, Thorpe, Whaley and Sparrow are charged with falsely making or counterfeiting obligations or securities of the United States, the maximum penalty would be a fine of not more than $5,000.00 or imprisoned not more than fifteen years, or both.

"The third count in which you and the codefendant Whaley are charged with possessing, without authority, obligations or securities made or executed in whole or in part after the similitude of $20.00 Richmond Federal Reserve Notes issued under the authority of the United States, knowingly, wilfully and with intent to sell or otherwise use same in violation of Title 18, U.S.Code, Section 474, the maximum penalty that may be imposed would be a fine of not

more than $5,000.00 or imprisoned not more than fifteen years, or both.

"Then on the fourth count in which you alone are charged with possessing, passing and uttering falsely made, forged and counterfeited obligations or securities of the United States in violation of Title 18, U.S.Code, Section 472, the maximum penalty that may be imposed by the Court would be a fine of not more than $5,000.00 or imprisoned not more than fifteen years, or both.

"And finally, the fifth count in which you alone are charged with possessing, without authority, obligations or securities made or executed in whole or in part after the similitude of $20.00 Richmond Federal Reserve Notes issued under the authority of the United States, knowingly, wilfully and with intent to sell or otherwise use same in violation of Title 18, U.S.Code, Section 474, the maximum penalties that may be imposed by the Court would be a fine not to exceed $5,000.00 or imprisonment for not more than 15 years, or both.

"Now, do you understand that?

"MR. BAYSDEN: Yes, sir."

Clearly, the trial record does not substantiate petitioner's charge and it must be rejected.

Petitioner Baysden next contends that the Court did not determine if any promises had been made to induce him to change his plea from not guilty to guilty. Petitioner alleges that he was under the impression that he would receive a maximum sentence of five (5) years. As the record above indicates, the Court clearly informed the petitioner of the maximum penalty as to each count of the indictment. Also, page seven of the record sets out the following conversation between the petitioner and the Court in respect to the question of promises:

"COURT: Has anyone from the prosecution, that is, the United States Attorney's Office, or any of the Treasury Agents or Secret Service or anyone else threatened you in any manner to obtain your plea of guilty to these charges?

"MR. BAYSEN: No, sir. They have always been very nice.

"COURT: Has anyone of them promised you any reward or hope of reward or leniency of the Court or of the prosecution in return for your plea of guilty?

"MR. BAYSDEN: No, sir.

"COURT: You make that plea freely and voluntarily, without fear or compulsion or coercion of any sort?

"MR. BAYSDEN: Yes, sir.

"COURT: Very well, Let his plea be recorded."

The record conclusively shows that the Court fully explored the question of promises and leniency with the petitioner.

Consequently, the Court rejects this contention.

The petitioner also contends that the Court refused him his right of allocution before passing sentence. Again the trial record is referred to, and it clearly shows that petitioner was given an opportunity to speak on two separate occasions before judgment was pronounced and entered. At page 15 of the record the following conversation took place between the petitioner Baysden and the Court:

"COURT: Very well. Mr. Baysden.

"MR. BAYSDEN: Yes, sir.

"COURT: Do you have any statement you wish to make to the Court at this time as to why—in way of mitigation or any other statement you care to make before sentencing?

"MR. BAYSDEN: Yes, sir. I would like to say something.

"COURT: Sir?

"MR. BAYSDEN: I would like to say something to the Court.

"COURT: Very well, I'll give you another opportunity then."

The above conversation clearly indicates that the Court asked Mr. Baysden if he had anything to say. At this point the petitioner became emotional and choked up, and therefore was unable to speak. The Court informed Mr. Baysden that it would give him an opportunity to speak later in the trial. The Court, without sentencing petitioner at this time, proceeded with other matters concerning petitioner's co-defendants.

Later in the trial the Court proceeded to sentence Mr. Baysden. At page 17 of the record the following conversation occurred:

"COURT: In 7163, William Earl Baysden, Edward Derwood Sparrow, Norwood Whaley. Let all of you come around here, and Mr. Thorpe.

"This Court is so zealous in the protection of the rights of all of the defendants as the progress of this case continued, I just want to be certain that every defendant has an opportunity to make any statement that he cares to make to the Court and this will be, of course the last opportunity for each of you in this particular case.

"Now, this is the first case and the Court is not unmindful of the fact that all of you having entered a plea of guilty to all five—well, entered a plea of guilty as to Mr. Baysden as to all five counts and Mr. Sparrow to two counts and Mr. Whaley to three counts and Mr. Thorpe to two counts that is has enabled the Court to proceed to pronounce judgment and that it has saved the Government a tremendous expense in presenting its case although the witnesses were here and, of course, the Government is at the expense of bearing their expenses while they were here, they were dismissed yesterday.

"Mr. Baysden, you did indicate in the other case that you were too full to make a statement. This is the case involving the March through April conspiracy matter. Do you have a further statement to make to the Court at this time.

"MR. BAYSDEN: Well, Your Honor, I would like to say this. I am sorry about what happened. I would like to have a chance to be back with my wife and friends and I'll never do this any more.

"COURT: Very well. Is there anything further?

"MR. BAYSDEN: No, sir."

The above record clearly indicates that petitioner was given his right of allocution. The petitioner was overcome with emotion and unable to speak when the Court first gave him the opportunity. At a later stage of the trial the Court again permitted the petitioner to speak. This occurred after the Court had informed the petitioner and his co-defendants that this would be their last opportunity to speak and that they could make any statement they wished to make. Clearly, this contention is without merit and is therefore rejected by this Court.

The Court has made an exhaustive and careful study of Mr. Baysden's petition and the record in the case. The Court, without granting the petitioner's request for a hearing, denies the petition as being without merit. The Court is of the opinion that substantial justice was done and that petitioner's Constitutional rights were protected throughout the trial.

Accordingly, the petition is hereby denied and dismissed.

Order filed in acordance with this opinion.