**Earl EGAN, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 16160.**

United States Court of Appeals
Eighth Circuit.

July 8, 1959.

Earl Egan, pro se.

F. E. Van Alstine, U. S. Atty., and William R. Crary, Asst. U. S. Atty., Sioux City, Iowa, for appellee.

Before SANBORN, VAN OOSTER-HOUT and MATTHES, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal *in forma pauperis* from an order of November 7, 1958, denying a motion of Earl Egan under 28 U.S.C. § 2255 to vacate a sentence of life imprisonment imposed on June 4, 1935, when he entered a plea of guilty to an indictment charging him and three others with the kidnapping and interstate transportation of Ernest Newman from Sioux City, Iowa, to a point in Minnesota near Fort Snelling, in violation of 18 U.S.C. § 408a, 48 Stat. 781.* That statute, in pertinent part, provided:

"Whoever shall knowingly transport or cause to be transported, or aid or abet in transporting, in interstate or foreign commerce, any person who shall have been unlawfully seized, confined, inveigled, decoyed, kidnapped, abducted, or carried away by any means whatsoever and held for ransom or reward or otherwise, * * * shall, upon conviction, be punished (1) by death if the verdict of the jury shall so recommend, provided that the sentence of death shall not be imposed by the court if, prior to its imposition, the kidnapped person has been liberated unharmed, or (2) if the death penalty shall not apply nor be imposed the convicted person shall be punished by imprisonment in the penitentiary for such term of years as the court in its discretion shall determine * * *."

The interstate kidnapping charged in the indictment took place on February 4, 1935, after Newman, one of the guards of an armored car, had been robbed at gunpoint by the defendants while carrying a bag of currency to or from the Live Stock National Bank, in the Live Stock Exchange Building in Sioux City, Iowa, and transported by automobile from Iowa to Minnesota, as charged in the indictment. Newman was released unharmed.

Egan and two of his codefendants, Knight and Jensen, were arraigned on June 1, 1935, before United States Dis-

* Now 18 U.S.C.A. § 1201.

trict Judge Charles E. Dewey, who was sitting by assignment in the Northern District of Iowa. The defendants Egan and Knight were represented by the same counsel. Egan entered a plea of not guilty. Knight and Jensen entered pleas of guilty. On June 4, 1935, Egan, with his attorney, appeared before Judge Dewey, and withdrew his plea of not guilty and entered a plea of guilty. Egan was given a life sentence. On the same day, Knight was sentenced to 25 years imprisonment, and Jensen to 20 years. Hanley, the fourth defendant named in the indictment, was a fugitive, but was later apprehended and sentenced to 15 years imprisonment by Judge Scott, United States District Judge for the Northern District of Iowa. Egan entered upon the execution of his sentence immediately after being sentenced, and has since been, and now is, in executive custody.

In his motion for vacation of his sentence, he asserted that the sentence is void because: (1) he was not properly arraigned before a United States Commissioner; (2) his plea of guilty was coerced because he was informed that his codefendants had signed confessions implicating him, and was advised that if he stood trial he would be given the limit, and, through fear of what that might be, he changed his plea of not guilty to guilty; (3) his sentence violated the equal protection clause of the Fourteenth Amendment to the Federal Constitution, since he was given a more severe sentence than his codefendants for the same offense.

Judge Graven, United States District Judge for the Northern District of Iowa, extended to Egan all possible consideration and assistance to enable him properly to present his motion. The Judge permitted him to file and docket the motion without payment of fee, and ordered the United States Attorney to make an investigation for the purpose of ascertaining the existence and whereabouts of persons who might have knowledge of the facts surrounding the imposition of sentence upon Egan in 1935, and to file a report giving the names and addresses of such persons. The United States Attorney complied, and on September 30, 1958, filed his report showing that virtually all those who had knowledge of the facts in regard to the sentencing of Egan, including Judge Dewey as well as counsel for the Government who handled the case against Egan on its behalf, and his counsel, were dead. On October 1, 1958, the United States Attorney filed a motion to dismiss the motion of Egan to vacate the judgment and sentence, on the ground that the files and records in his case conclusively showed that as a matter of law he was entitled to no relief and that the judgment was invulnerable to attack. This motion was not ruled upon.

On October 2, 1958, Judge Graven appointed Mr. Jesse E. Marshall, of the Sioux City, Iowa, Bar, to represent Egan in connection with his motion; set the motion for hearing at Sioux City, Iowa, on November 5, 1958; and ordered that Egan be produced at the hearing, and that he be made available at Sioux City for consultation with his attorney at least seven days in advance of the hearing.

The hearing on the motion took place on November 6, 1958. Egan was present in person and was represented by his attorney, Mr. Marshall. The testimony on behalf of the Government substantiated the facts relative to the sentencing of Egan as shown by the files and records of the court.

Egan, who was born with a crippled right arm, then told his story in great detail and apparently with frankness and fairness. He told of his unfortunate boyhood, explained in detail how the crime charged in the indictment was committed and the part he played in it; admitted that he and his codefendants had been professional—if not very successful—criminals; asserted that his character had changed since his incarceration; and denied that he had played any greater part in the execution of the armed robbery and kidnapping of Newman than had his codefendants. It is unnecessary to detail his testimony, since we shall assume that Egan made out an

excellent case for release on parole or for executive clemency. There was, however, nothing presented at the hearing which, in our opinion, could have justified the court in granting the motion for the vacation or modification of Egan's sentence. There was no basis in the evidence at the hearing for a finding that Egan was coerced by officers of the United States into pleading guilty or that he was innocent or that his plea was involuntary.

Mr. Marshall, who represented Egan before Judge Graven, in his closing argument said, among other things:

"Now, the only thing that I can in fairness ask the Court to do is to resentence this man from a term of life to a sentence where he would be eligible at some time for parole. He has served twenty-three years since this incident."

He also said:

"Equal justice would seem to acquire [require] somewhere equal sentences. I think the man has been unduly punished and that he has learned, while serving his sentence, to avail himself beyond the average, of the opportunities that the government has given him in trying to make something of himself. He has a good trade. He is an expert cook and baker. He is able to make a living; he could take care of himself very well without the expense of the government and he could do that under proper supervision and parole."

Mr. Marshall told the court that Egan said he had, for years, applied for executive clemency, but had been unable to get a hearing or even a reply.

█ Judge Graven, in an exhaustive, detailed and sympathetic opinion, ruled that he was without power to resentence Egan, and that the sentence imposed on June 4, 1935, was not an illegal sentence. We think the judge could have reached no other conclusion. Compare, Livers v. United States, 6 Cir., 185 F.2d 807.

██ When a judge imposes a sentence authorized by a statute of the United States, he commits no error of law, and neither the District Court nor this Court can concern itself with the reasonableness of the sentence. Affronti v. United States, 8 Cir., 145 F.2d 3, 10 and cases cited. See, also, Livers v. United States, supra, page 809 of 185 F. 2d. While a court may correct an illegal sentence at any time (Rule 35 of the Rules of Criminal Procedure, 18 U.S. C.A.), the beginning of the service of the sentence in a criminal case ends the power of the court to change it. Ex parte Lange, 18 Wall. 163, 85 U.S. 163, 21 L.Ed. 872; United States v. Murray, 275 U.S. 347, 358, 48 S.Ct. 146, 72 L.Ed. 309. See and compare, Phillips v. United States, 8 Cir., 212 F.2d 327, 335, and Affronti v. United States, 350 U.S. 79, 83, 76 S.Ct. 171, 100 L.Ed. 62.

█ Furthermore, Egan, under 18 U. S.C. § 4202, having served more than fifteen years of his life sentence, was and is eligible for release on parole. That section provides:

"A Federal prisoner, other than a juvenile delinquent, wherever confined and serving a definite term or terms of over one year, whose record shows that he has observed the rules of the institution in which he is confined, may be released on parole after serving one-third of such term or terms or after serving fifteen years of a life sentence."

Section 4203(a) of Title 18 U.S.C. provides:

"If it appears to the Board of Parole from a report by the proper institutional officers or upon application by a prisoner eligible for release on parole, that there is a reasonable probability that such prisoner will live and remain at liberty without violating the laws, and if in the opinion of the Board such release is not incompatible with the welfare of society, the Board may in its discretion authorize the release of such prisoner on parole."

"Executive clemency exists to afford relief from undue harshness or evident mistake in the operation or enforcement of the criminal law. The administration of justice by the courts is not necessarily always wise or certainly considerate of circumstances which may properly mitigate guilt." Ex parte Grossman, 267 U.S. 87, 120–121, 45 S. Ct. 332, 337, 69 L.Ed. 527.

We are satisfied that, under Egan's own testimony, there is no judicial remedy available to him for the vacation or modification of his sentence.

The order appealed from is affirmed.