STATE of Delaware, Plaintiff
Below Appellant,

v.

Roy LEWIS, Defendant
Below, Appellee.

No. 548, 2000.

Supreme Court of Delaware.

Submitted: Dec. 4, 2001.
Decided: May 16, 2002.
As Corrected May 20, 2002.

Paul R. Wallace, Esquire (argued) and
Kathleen V. Edwards, Esquire, Deputy At-

torneys General, Department of Justice, Wilmington, Delaware, for Appellant.

Christopher D. Tease, Esquire, Wilmington, Delaware, for Appellee.

Before VEASEY, Chief Justice, WALSH, HOLLAND, BERGER, and STEELE, Justices, constituting the Court En Banc.

WALSH, Justice, for the Majority.

The State of Delaware ("State") initiated this appeal from a decision of the Superior Court that denied the State's motion to vacate an order granting the appellee, Roy Lewis' ("Lewis") motion for modification of sentence. The State contends that the Superior Court lacked authority under Superior Court Criminal Rule 35(b) to modify a sentence after the terms of the sentence had expired. Even if such authority exists, the State further argues, the granting of such in this case constituted an abuse of discretion.

■ We conclude that the Superior Court has authority to modify a sentence under Rule 35(b) so long as collateral consequences attach to the sentence. We further conclude that the modification granted here was not an abuse of the discretion afforded by the Rule. Accordingly, we affirm.

I

Lewis, a citizen of Jamaica who has resided in Delaware since 1977, pleaded guilty in 1991 to Assault Second Degree and was sentenced to eight years of Level V incarceration. The incarceration was suspended for one year of Level IV to be followed by six months of Level III probation. Lewis violated his probation in 1992 and was given a new sentence of thirty-one days at Level V and one additional year of probation. In 1999, Lewis pleaded guilty to Assault Third Degree and Menacing, and was sentenced to one year and thirty days at Level V, suspended for one year at Level III, suspended in turn after six months for the remainder at Level II.

On January 24, 2000, the Immigration and Naturalization Service ("INS") initiated deportation proceedings against Lewis citing the offenses mentioned above and a misdemeanor drug offense that occurred in 1990. By that time, Lewis had completely served the sentences for those offenses. The United States Immigration Court ordered Lewis deported.

Pursuant to Superior Court Criminal Rule 35(b), Lewis filed a Motion for Modification of Sentence. Lewis requested that the sentence for his Assault Second conviction be reduced to eleven months at Level V, so that this conviction would no longer be in the class of criminal offenses that would make him deportable. The Superior Court granted the motion, reasoning that the hardship on Lewis' family constituted "extraordinary circumstances" within the meaning of Rule 35(b). The court held that the "collateral consequences" exception for mootness as applied in *Gural v. State*, 251 A.2d 344 (Del.1969), provided a basis for relief under Rule 35 and thus the completion of Lewis' sentence did not prevent the court from granting the motion.[1]

II

■ The applicability or construction of a statute or court rule is a question of law and is subject to *de novo* review. *Grand*

---

1. Lewis also sought a modification of his June 14, 1999 sentence of one year imprisonment suspended for one year of probation. On July 17, 2000, another Superior Court judge modified that sentence to provide for a suspended period of imprisonment of ten months. Even though that sentence of imprisonment and the period of probation had also expired at the time of its modification, the State has not appealed from that order.

*Ventures v. Whaley,* 632 A.2d 63, 66 (Del. 1993).

The State argues that the Superior Court could not reduce Lewis' 1991 sentence pursuant to Superior Court Criminal Rule 35(b) because the sentence was legal in its terms, and had been fully served and discharged by the time of this petition in 2000. The rule's purpose, it contends, is to examine the appropriateness of a sentence while it is still being served. The State further contends that since *Gural* was decided in 1969, the Superior Court Criminal Rules have been restructured and the exceptions to time limits more narrowly defined. Specifically, the State maintains that Rule 61, with its equitable consideration, is the only operative rule for postconviction relief, precluding the need for a time limit in Rule 35.

In *Gural,* this Court adopted the "federal rule" that "satisfaction of the sentence renders the case moot unless ... the defendant suffers collateral legal disabilities." *Gural v. State,* 251 A.2d 344. In *United States v. Romero–Vilca,* 850 F.2d 177 (3d. Cir.1988), the Third Circuit Court held that deportation was a collateral consequence for the purposes of the mootness exception, despite the fact that the sentencing court was not required to inform the defendant of this potential consequence of his guilty plea. *Romero–Vilca,* 850 F.2d at 179. This Court has also ruled that a defendant is not entitled to a warning of possible deportation at the time of sentencing. *Christie v. State,* 655 A.2d 306 (Del.1994).

The State's argument that a sentence modification through postconviction relief is available only on the basis of a constitutional or legal defect does not acknowledge the differences in the language and func-

tion of Rule 35(b) and Rule 61. In *Johnson v. State,* 280 A.2d 712, 713 (Del.1971), this Court held that "[t]he purpose of Rule 35 is to afford a remedy in lieu of *habeas corpus* and *coram nobis,* to the defendant who claims that his conviction was obtained or his sentence imposed in violation of his constitutional guaranties." The Superior Court Criminal rules were revised, however, in 1987, after the *Johnson* opinion. The former Rule 35 was replaced by Rule 61 and Rule 35 in its current form. Rule 61 addresses postconviction relief, which requires a legal challenge to the conviction, whereas Rule 35(b) allows a reduction of sentence, without regard to the legality of the conviction.

Rule 61(a)(1) provides relief only "on the ground that the court lacked jurisdiction or on any other ground that is a sufficient factual and legal basis for a collateral attack upon a criminal sentence ...." Super. Ct.Crim. R. 61(a)(1). Moreover, the three year time limit for relief under Rule 61(i)(1) is inapplicable only when there is a claim that "there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the conviction." Super. Ct.Crim. R. 61(i)(5).[2]

▬ Rule 35(b), on its face, makes a clear distinction based on the timing of the motion. The power to grant modification, in general, is limited to motions filed within 90 days of sentencing. In contrast, the rule sets no time limit for granting relief under "extraordinary circumstances." In short, Rule 35(b) authorizes a sentencing court to modify or reduce a sentence that has expired where "extraordinary circumstances" are present. *See* Super. Ct.

---

**2.** It is worth noting that this exception under Rule 61(i)(5) is distinct from the "interest of justice" exception to Rule 61(i)(2), which bars any claim for postconviction relief not raised at a prior hearing for postconviction relief, or Rule 61(i)(4), which bars consideration of any grounds for relief that have already been adjudicated. Super. Ct.Crim. R. 61(i).

Crim. R. 35(b). Here, the Superior Court found that under the "unique set of facts presented" that "extraordinary circumstances were present." *State v. Lewis*, 2000 WL 33113932, *3 (Del.Super.2000).

■ The plain meaning of words controls when a statute is unambiguous, and statutory interpretation is unnecessary. *See Ingram v. Thorpe*, 747 A.2d 545, 547 (Del.2000); *Eliason v. Englehart*, 733 A.2d 944, 946 (Del.1999). We find that analysis equally applicable to an interpretation of a court rule. We are aware of no policy reason that supports imposing a time requirement in the absence of clear language in the rule.

### III

The comparison between the parameters of Rule 61 and the scope of relief under Rule 35(b) is enlightening. Rule 35(b) allows for a reduction of sentence without regard to the existence of a legal defect. Rule 35(b) states simply "[t]he court may reduce a sentence of imprisonment on a motion made within 90 days after the sentence is imposed." After 90 days, the court will consider an application only in "extraordinary circumstances." Super. Ct.Crim. R. 35(b). While Rule 61 may provide relief comparable to a writ of *habeas corpus* or *coram nobis*, Rule 35(b), as it exists subsequent to the promulgation of Rule 61, appears on its face to permit a reduction of sentence at the discretion of the sentencing court.

The equitable considerations presently allowable under *Gural* are not limited to the "fairness" and "interest of justice" exceptions to Rule 61(i). Contrary to the assertion of the State in this case, *Gural* did not hold that a defendant can seek relief after the completion of a sentence only when there is a constitutional or legal defect alleged. In fact, *Gural* asserted no such defect. Rather, the Court held that collateral consequences, such as inability to engage in certain business activities or restricted civil rights, could be grounds to permit relief after the completion of a sentence. *Gural*, 251 A.2d 344. Such circumstantial factors are not considered under Rule 61(i) for the purposes of waiving a time limitation. The open language of Rule 35(b), however, can be plainly read as permitting such considerations.

Furthermore, Rule 61(a) allows for post-conviction relief only when the defendant is "in custody or subject to further custody" for the particular sentence being challenged. *Guinn v. State*, 625 A.2d 279 (Del. 1993). The *Guinn* holding suggests, therefore, that relief after the completion of a sentence cannot be secured under Rule 61, because the language of 61(a) appears to create a standing bar. If the collateral consequences rule for mootness is to have any applicability at all, it must be available under Rule 35 as opposed to Rule 61.

Rule 35(b), as it is currently written, confers upon a sentencing trial judge considerable discretion over the appropriate grounds for a reduction of sentence. This discretion is comparable to the discretion to reduce a lawful sentence under Rule 35(b) of the Federal Rules of Criminal Procedure. In *United States v. Maynard*, 485 F.2d 247 (9th Cir.1973), the Ninth Circuit Court explained that "[i]f a lawful sentence was lawfully imposed in the first instance, then the function of Rule 35 is simply to allow the district court to decide if, on further reflection, the original sentence now seems unduly harsh. The motion is directed to the court's discretion and is essentially a 'plea for leniency.'" *Maynard*, 485 F.2d at 248 (citations omitted).

Federal Rule of Criminal Procedure 35(b) was amended by the Sentencing Reform Act of 1984 and is currently very different from Delaware's Rule 35(b). While the former federal rule provided a

120 day time limit for motions to reduce a sentence, motions for a reduction of sentence may now be brought only by the government, upon a showing that the defendant rendered substantial assistance.[3] *See* Fed. R. Crim. Pro. 35(b). Thus, in the federal system, the discretion of judges to reduce a lawful sentence is no longer limited temporally, but is restricted to motions brought by the government. The Delaware rule, which clearly allows defendants to move for a reduction of their sentence, obviously grants trial judges broader discretion than its federal counterpart.

■ If we conclude, as we must, that Rule 35(b) confers authority to modify a sentence, the exercise of that authority is viewed under an abuse of discretion standard. Under this highly deferential standard, a reviewing court should resist a tendency to substitute its views for those of the judge exercising the initial power. The test is not whether the reviewing court would have ruled otherwise but whether the trial court acted within a zone of reasonableness or stayed within "a range of choice." *Kern v. TXO Production Corp.*, 738 F.2d 968 (8th Cir.1984); *see also Solis v. Tea*, 468 A.2d 1276, 1279 (Del.1983) (stating this Court "will not substitute its own opinions" for that of the trial judge); *Chavin v. Cope*, 243 A.2d 694, 695 (Del.1968) (holding that in reviewing an act of judicial discretion, "the reviewing court may not substitute its notions of what is right for those of the trial judge, if his judgment was based upon conscience and reason, as opposed to capriciousness or arbitrariness").

■ Here, the Superior Court identified certain factors that it viewed as constituting "extraordinary circumstances" which prompted the exercise of its discretion: "1) the nature of the original sentence; 2) the time Defendant spent actually incarcerated; 3) possible deportation of Defendant; and 4) the hardship on innocent persons that would result from Defendant's deportation, viewed collectively." *State v. Lewis*, 2000 WL 33113932, *3 (Del.Super.2000). The State contends that the risk of deportation is a federal concern within the purview of the Immigration and Naturalization Service and not a matter that should prompt a State court to exercise its authority under Rule 35(b). This argument overlooks the significance of the administrative proceeding at the federal immigration level that prompted Lewis' Rule 35(b) motion.

On October 12, 2000, the Board of Immigration Appeals remanded Lewis' deportation order to the Immigration Judge to permit Lewis "to apply for any relief for which he might be eligible" as a result of Lewis' newly filed "motion for reduction of sentence." *In re Roy Henry Lewis*, File No. A35 541 061 (Bd. Immigration Appeals Oct. 12, 2000). Thus, Lewis' resort to a modification of sentence is not only permitted under the federal immigration scheme but, in this case, provided the basis for a stay in the proceeding. Presumably, when the Superior Court entered its order under Rule 35(b) it was aware that its grant of relief could affect the pending deportation proceedings and thus was a factor in determining "extraordinary circumstances."

■ We conclude that the Superior Court had authority under Rule 35(b) to modify Lewis' sentence notwithstanding its expiration, and did not abuse its discretion

---

**3.** The 1998 Advisory Committee Notes to Rule 35 state: "[A] defendant who provides substantial assistance after the sentence has been imposed may receive a reduction of the sentence if the Government files a motion under Rule 35(b)." *See also United States v. Blackwell*, 81 F.3d 945 (10th Cir.1996); *White v. United States*, 998 F.2d 572 (8th Cir.1993) (both stating that Rule 35(b) applies only to motions made by the government and therefore does not empower the district court to reduce a defendant's sentence on a motion by the defendant).

in granting relief. Accordingly, the judgment of the Superior Court is AFFIRMED.

STEELE, Justice, with whom BERGER, Justice, joins, dissenting.

Today a majority of this Court concludes that Rule 35(b) authorizes a Superior Court judge to reduce the sentence of a person convicted in 1991 long after that person served that sentence and more than eight years after Rule 35(b)'s 90 day limit for filing a Motion for Reduction of Sentence had expired. The majority so concludes simply because "collateral consequences" that were inchoate until nine years after sentencing "attach[ed] to the sentence." I am unable to agree with the majority's conclusion and, therefore, must respectfully dissent.

The majority concludes that the sentencing judge properly considered hardships that might befall Lewis' family should he be deported by the federal immigration authorities because those hardships would constitute "extraordinary circumstances" under Rule 35(b).

Both the sentencing judge's and the majority's conclusion is a fundamental misinterpretation of Rule 35(b)'s use of the term "extraordinary circumstances." This Court has held on several occasions that a Motion for Reduction of Sentence pursuant to Rule 35(b) is time-barred after 90 days unless the petitioner is able to demonstrate extraordinary circumstances that

specifically justify the delay.[4] While the majority correctly points out that our rule is more liberal that its former federal counterpart,[5] I have found nothing, and neither the sentencing judge nor the majority cite any authority that suggests that our rule was intended to be interpreted as broadly as the majority believes. When the Superior Court chose to include the "extraordinary circumstances" language in its Rule 35(b), it merely reflected what the United States Supreme Court has acknowledged as a matter of common law—that even the strict time limitations contained in certain Federal Rules of Criminal Procedure were not so absolute that they would bar consideration on the merits when a delay in filing was due to circumstances entirely beyond a petitioner's control.[6] A careful examination of the wording of Rule 35 reveals four bases for "correction or reduction of sentence."

First, a court may correct an "Illegal sentence at any time…" (i.e. without any time limitation on filing for the remedy).

Second, a sentence "imposed in an illegal manner" may be corrected *within the time* provided herein for the reduction of sentence." (A direct, clear reference to the time window of 90 days provided in Rule 35(b)).

Third, where the request is for a reduction of sentence under Rule 35(b), the court may "reduce a sentence of imprisonment on a motion made *within 90 days*

4. *Black v. State,* 741 A.2d 1025 (Table), 1999 WL 1098171, ——1 (Del.1999) (Holland, J., order); *Winn v. State,* 716 A.2d 975 (Table), 1998 WL 515166, ——2 (Del.1998) (Veasey, C.J., order); *Abdul–Akbar v. State,* 703 A.2d 643 (Table), 1997 WL 776208, ——1 (Del. 1997) (Berger, J., order).

5. The ability of federal defendants to file for a reduction of sentence within 120 days of imposition was deleted from Fed.R.Crim.P. 35 as part of the Sentencing Reform Act of 1984, Pub.L. No 98–473.

6. *Fallen v. United States,* 378 U.S. 139, 142–43, 84 S.Ct. 1689, 1691–92, 12 L.Ed.2d 760 (1964). Although *Fallen* addressed the filing of an appeal under Fed.R.Crim.P. 37, an earlier decision of the Court analogized the strict limitations of Rule 37 with the then–60–day limitation for filing a Motion for Reduction of Sentence under Fed.R.Crim.P. 35(b). *United States v. Robinson,* 361 U.S. 220, 80 S.Ct. 282, 4 L.Ed.2d 259 (1960).

*after the sentence is imposed.*" This time window may be opened for consideration of an application for reduction of a sentence of imprisonment made after 90 days "only in extraordinary circumstances."

Finally, a sentence may be corrected for technical error within 7 days after imposition of the sentence.

Importantly, Rule 45(b) specifically excludes Rule 35 applications from ordinary considerations for enlargement of the time to file motions.

It seems obvious that the drafters intended to subject Rule 35 petitions to rational, workable time frames that could not be enlarged on an *ad hoc* basis. Indeed, I have difficulty believing that they anticipated an application of this Rule that would leave open any sentence for reconsideration indefinitely, restrained only by the discretion of whatever judge happened to be assigned a Rule 35 motion for relief, whether that judge had presided over the initial sentencing or not.

Even if the need for a closed window on Rule 35 motions except to correct an illegal sentence were not so evident as a matter of sound public policy, I find that the majority's and the sentencing judge's reliance on the collateral consequences exception for mootness to be sorely misplaced. Like the federal judiciary, our courts are not to consider any action absent genuine controversy.[7] While it is well recognized that the orderly administration of justice requires that certain exceptions exist, they are not properly applicable here. The policy behind our decision in *Gural v. State* and its federal progenitors simply is not based on the collateral consequences that may attach to the *sentence* of a duly convicted defendant. Instead, the drafters designed the "federal rule" on the principle that the individual who believes that he or she has been wrongly *convicted* should not be barred from pursuing an appeal or other postconviction challenge to that *conviction* despite the completion of any sentence in order to avoid the collateral consequences that may attach as a result.[8]

The language in *Gural* does mention, but only in passing, that collateral consequences might attach to sentencing. I have been unable to locate a single written opinion in our courts concluding that this mootness exception applies to a challenge to a *sentence* as opposed to a *conviction*. Moreover, at least one recent decision of the United States Supreme Court suggests that the sole instance in which the Court acknowledged that an otherwise moot sentencing challenge might survive because of collateral consequences was *dicta* (impliedly not thoughtful *dicta* at that) with little, if any, value as precedent.[9] Indeed, the Supreme Court has stated that this "almost offhanded[ ]" comment in *Pollard* and its "parsimonious view of the function of Article III standing has since yielded to the acknowledgment that the constitutional requirement [of an actual case or controversy] is a 'means of defin[ing] the role assigned to the judiciary in the tripartite allocation of power.' "[10] I further note

---

7. *Southern Prod. Co., Inc. v. Sabath*, 87 A.2d 128 (Del.1952); *State ex rel. Traub v. Brown*, 197 A. 478 (Del.1938).

8. In the case cited by the *Gural* court, *Carafas v. LaVallee*, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968), the collateral consequence faced by the petitioner was disqualification from certain employment. Other potential consequences attendant to a conviction include loss of voting privileges and disqualification from service on a jury.

9. *Spencer v. Kemna*, 523 U.S. 1, 9, 118 S.Ct. 978, 984, 140 L.Ed.2d 43 (1998) (discussing *Pollard v. United States*, 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957)).

10. *Spencer*, 523 U.S. at 11–12, 118 S.Ct. at 985 (quoting *Valley Forge Christian College v. Americans for Separation of Church and State*,

that even in its most liberal application at the federal level, the courts apply the collateral consequences doctrine only to challenges that were originated *before* the completion of a sentence. In no instance have the courts allowed a petitioner to resurrect a claim which could have been, but was not, raised in a timely fashion.

The United States Supreme Court's concern in *Spencer* and *Valley Forge Christian College* that a permissive application of the standing requirement infringes on the separation of powers should be of equal concern to the Delaware courts. While the majority may correctly describe a Rule 35(b) motion as a plea for leniency, after 90 days, that plea for leniency falls squarely within the discretion of the executive branch, and the judiciary may not consider it except where "extraordinary circumstances" may have prevented the applicant from seeking the remedy on a timely basis. The appropriate remedy for a sentence, long since served, even one which allegedly subjects a person and his family to newly discovered unduly harsh consequences, but which was otherwise legally imposed is executive clemency, not judicial action.[11] Article VII of the Constitution of 1897 vests the Governor, upon the recommendation of the Board of Pardons, with the sole power to grant reprieves, commutations of sentence and pardons. Our courts have concluded that the Governor may neither delegate nor share this power.[12] The majority's position implies that the courts may assume that power, nonetheless, where the merits of a stale petition for a reduction of sentence may be characterized as to be "extraordinary circumstances."

Finally, sound public policy reasons dictate strict adherence to the 90–day time limit imposed by Rule 35(b). In examining the Superior Court's application of procedural bars to postconviction relief under Rule 61, this Court has long recognized the necessity of dismissing most petitions for procedural noncompliance to keep that trial court from being overwhelmed by the burdensome task of deciding each claim on its supposed merits. Now, despite the majority's protestations that Rule 35 relief is distinctly different than that offered under Rule 61, the majority opinion essentially opens a second door to postconviction relief, yet without the procedural protections necessary to filter out frivolous claims. When this Court removes the thoughtful, rational time bar Superior Court has written into its rule, we force the Superior Court to consider each Rule 35(b) petition on the merits of every extraordinary circumstance that might be alleged, demand that an inordinate amount of our scarce judicial resources be devoted to this purpose, unnecessarily usurp well founded Constitutional principles codifying executive clemency, and foster widely disparate exercises of discretion that may well result in inconsistent, irreconcilable outcomes. Therefore, I dissent.

---

*Inc.*, 454 U.S. 464, 474, 102 S.Ct. 752, 759, 70 L.Ed.2d 700 (1982)).

**11.** *Ex Parte Grossman*, 267 U.S. 87, 120–21, 45 S.Ct. 332, 337, 69 L.Ed. 527. 267 U.S. 87,

45 S.Ct. 332, 69 L.Ed. 527 (1925); *Egan v. United States*, 268 F.2d 820 (8th Cir.1959).

**12.** *In re McKinney*, 138 A. 649, 651–52 (Del.Super.Ct.1927)