# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | | |
|---|---|---|---|
| STATE OF DELAWARE, | ) | | |
| | ) | | |
| v. | ) | **I.D. No. 1702005493** | |
| | ) | **Cr. A. Nos. PN17-02-1754, etc.** | |
| DARNELL D. MARTIN, | ) | | |
| Defendant. | ) | | |

Submitted: August 24, 2022
Decided: November 28, 2022

*Upon Remand from the Supreme Court of Delaware,*
*Defendant Darnell D. Martin's Motion for Postconviction Relief,*
**QUESTIONS ANSWERED**.

Darnell Martin was discharged from probation and his sentence completed while his postconviction proceeding was still underway here. Because he no longer satisfied the "in-custody" requirement to proceed under this Court's Criminal Rule 61, Mr. Martin's pending postconviction motion was dismissed as moot. His appeal of that dismissal is now before this Court on remand to address the effects, if any, of a prior pardon on his standing under Rule 61.

## FACTUAL AND PROCEDURAL BACKGROUND

(1)     After a bench trial conviction for drug-related charges, Mr. Martin was sentenced immediately to serve, *inter alia*, a 25-year term of incarceration suspended

after two years for 18 months of supervised probation.[1] The two years of unsuspended imprisonment comprised a mandatory-minimum term of incarceration that could not be suspended.[2] The Delaware Supreme Court affirmed Mr. Martin's convictions and sentence on direct appeal—the sole claim on that direct appeal targeted this Court's denial of his suppression motion.[3]

(2) Mr. Martin timely filed a *pro se* motion for postconviction relief and a motion for appointment of counsel under Superior Court Criminal Rule 61.[4] The Court granted the motion for appointment of counsel and Mr. Martin's postconviction attorney then filed an amended Rule 61 motion on his behalf.[5] That amended motion charged Mr. Martin's previous counsel with ineffective assistance in the prosecution of his pre-trial suppression motion and direct appeal.[6]

(3) While his postconviction motion was pending, Mr. Martin was discharged from probation with no further obligations remaining under the imposed

---

[1] *State v. Martin*, 2019 WL 1126059, at *1 (Del. Super. Ct. Mar. 12, 2019) (denying Mr. Martin's request for a reduction of sentence under Criminal Rule 35(b)); *see also* Sentencing Order, *State v. Darnell D. Martin*, ID No. 1702005493 (Del. Super. Ct. Jan. 12, 2018) (D.I. 31).

[2] DEL. CODE ANN. tit. 16, § 4752(2) (2016) (drug dealing in a tier 2 quantity of marijuana with an aggravating factor is a class B felony); *id.* at tit. 11, §§ 4205(b)(2) & (d) (sentence "[f]or a class B felony [is] not less than 2 years . . . [and any] minimum, mandatory, mandatory minimum or minimum mandatory sentence [ ] required by subsection (b) of [§ 4205] . . . shall not be subject to suspension by the court").

[3] *Martin v. State*, 2018 WL 4959037, at *1 (Del. Oct. 12, 2018).

[4] *State v. Martin,* 2021 WL 1030348, at *1 (Del. Super. Ct. Mar. 17, 2021).

[5] *Id.*

[6] *Id.*

sentence.[7] In other words, he was released from all "custody" under the conviction challenged in his postconviction proceeding.[8]

(4) When determining whether postconviction relief might be available to one no longer "in custody" under a sentence for the challenged conviction, Delaware Courts have long and consistently held that relief under Rule 61 is not available.[9] Accordingly, Mr. Martin's postconviction motion was dismissed as moot[10] because

---

[7] *Id.*

[8] *See, e.g.*, *Obado v. New Jersey*, 328 F.3d 716, 717 (3d Cir. 2003) (observing that to be "in custody" for federal habeas corpus purposes, an individual must, at least, be "subject both to significant restraints on liberty . . . which were not shared by the public generally, along with some type of continuing governmental supervision" (citations and quotation marks omitted)).

[9] *See Steck v. State,* 2015 WL 2357161, at *2 (Del. May 15, 2015) ("As a general matter, relief under Rule 61 is only available when the movant is in custody on the conviction that is the subject of the postconviction motion."); *Ruiz v. State*, 2011 WL 2651093, at *2 (Del. July 6, 2011) (finding movant "lack[ed] standing" to seek postconviction relief because this Court had discharged him from probation); *Summers v. State*, 2003 WL 1524104, at *1 (Del. Mar. 20, 2003) (movant was no longer in custody as a result of the challenged conviction "and thus [wa]s not entitled to seek postconviction relief" (citation omitted)); *Guinn v. State*, 1993 WL 144874, at *1 (Del. Apr. 21, 1993) (finding that because movant "is no longer in custody" he "cannot seek postconviction relief from this sentence"); *State v. Jackson*, 2016 WL 7076990, at *1 (Del. Super. Ct. Dec. 5, 2016) (finding that as movant had no further obligation under the sentence, he was no longer "in custody" and lacked standing to pursue his then-pending Rule 61 petition); *State v. Cammille*, 2014 WL 2538491, at *1 (Del. Super. Ct. June 3, 2014) (because movant was no longer "in custody . . . in a manner contemplated by Rule 61" he "lack[ed] standing under Rule 61 and [wa]s not entitled to seek postconviction relief" (quotation marks omitted)); *State v. Hinson*, 2006 WL 337031, at *2 (Del. Super. Ct. Feb. 10, 2006) (movant was "barred from relief pursuant to Rule 61 from her [challenged] conviction because she [wa]s not 'in custody or subject to future custody' for that challenged conviction" (citing pre-amendment Del. Super. Ct. Crim. R. 61)).

[10] *See Watson v. State*, 2015 WL 1456771, at *2 (Del. Mar. 30, 2015) ("Generally, under Delaware law, once a criminal sentence is completed, any postconviction claim with respect to that conviction is moot because the defendant is no longer 'in custody under [the] sentence.'" (alteration in original) (citations omitted). *Accord Paul v. State*, 2011 WL 3585623, at *1 (Del. Aug. 15, 2011) (finding the same).

he lost standing to challenge his conviction and completed sentence.[11] The Court noted in its *sua sponte* dismissal order[12] that, given Mr. Martin's lengthy criminal history of felony drug convictions,[13] no collateral consequences were suffered as a result of the underlying conviction.[14]

(5) Mr. Martin argues this Court must consider the merits of his postconviction motion under the collateral consequences doctrine because he received an unconditional gubernatorial pardon in 2013 for his prior drug convictions—a fact not known to this Court when it entered its *sua sponte*

---

[11] *See Pumphrey v. State*, 2007 WL 3087405, at *1 (Del. Oct. 23, 2007) (holding this Court "did not err in concluding that appellant lacked standing to pursue a motion for postconviction relief because appellant had completed his sentence and thus was no longer 'in custody or subject to future custody' under the sentence for which postconviction relief was sought" (quoting pre-amendment Rule 61(a)(1)); *Fullman v. State*, 2000 WL 140114, at *1 (Del. Feb. 1, 2000) (because movant was no longer serving a sentence on the challenged Delaware charges, he "d[id] not have standing to pursue his claims pursuant to Rule 61").

[12] *See e.g., Humanigen, Inc. v. Savant Neglected Diseases, LLC*, 238 A.3d 194, 208 (Del. Super. Ct. 2020) ("the Court may consider standing *sua sponte*" (citations omitted)); *Thornton v. Bernard Techs., Inc.*, 2009 WL 426179, at *4 (Del. Ch. Feb. 20, 2009) ("because standing is jurisdictional in nature, the Court may raise it *sua sponte*" (citing *Koutoufaris v. Dick*, 604 A.2d 390, 401 (Del. 1992)).

[13] *E.g.,* Sentencing Order, *State v. Darnell D. Martin*, ID No. 91006298DI (Del. Super. Ct. Mar. 15, 1992) (setting forth Mr. Martin's sentence for cocaine delivery and a related charge); Sentencing Order, *State v. Darnell D. Martin*, ID No. 93003115DI (Del. Super. Ct. May 12, 1993) (Mr. Martin is sentenced for possession with intent to deliver cocaine); Sentencing Order, *State v. Darnell D. Martin*, ID No. 9402004121 (Del. Super. Ct. Dec. 20, 1994) (Mr. Martin's sentence for simple possession of cocaine); Sentencing Order, *State v. Darnell D. Martin*, ID No. 9912018840 (Del. Super. Ct. Feb. 9, 2000) (Mr. Martin is sentenced for trafficking in cocaine).

[14] *See Paul*, 2011 WL 3585623, at *1 (noting that "[t]he only exception to the [in custody] rule is when the defendant 'suffers collateral legal disabilities or burdens'" (*quoting Gural v. State*, 251 A.2d 344, 344-45 (Del. 1969))); *see also Jackson*, 2016 WL 7076990, at *1 (observing that with his lengthy criminal record, the fully discharged movant could never "establish that he would suffer any collateral consequences as a result of the convictions" he challenged via his then-pending Rule 61 motion (citation omitted)).

dismissal.[15] In his view, he is no different than a first-time felon for purposes of the collateral consequences analysis.[16] As a result of the underlying conviction, Mr. Martin contends that he, like any other first-time felon in Delaware, lost certain core civic rights, *e.g.*, the right to serve on a jury and the right to purchase or possess firearms and ammunition.[17]

(6)    While considering the merits of his appeal, the Delaware Supreme Court determined that the effects of a pardon on a collateral consequences analysis: (a) was a novel issue; and (b) consideration thereof by this Court in the first instance would be beneficial. So, the matter was remanded for the Court to address the following:

(i)    Whether a person convicted of a felony for the first time faces collateral consequences under *Gural v. State*?[18]

(ii)    Whether a person who has received a pardon must be treated the same as a first-time felon for purposes of analyzing the collateral consequences rule in connection with resolving a motion for postconviction relief?[19]

---

[15]    *See Martin,* 2021 WL 1030348, at *1; Order for Remand ¶ 10, *Martin v. State*, Del. Supr., No. 112, 2021 (Del. Oct. 28, 2021) (Montgomery-Reeves, J.) (hereinafter "Remand Order"); *see also* Def.'s Suppl. Mem. at 8, *State v. Darnell D. Martin*, ID No. 1702005493 (Del. Super. Ct. Dec. 13, 2021) (D.I. 84).

[16]    Remand Order ¶ 10.

[17]    *Id.*

[18]    *Id.* ¶ 11 (citing *Gural*, 251 A.2d 344).

[19]    *Id.*

## DISCUSSION

### A. COLLATERAL CONSEQUENCES AND FEDERAL HABEAS CORPUS

(6)     The collateral consequences rule is one judicially created and originates from a 1968 United States Supreme Court decision on a federal petition for a writ of habeas corpus. In *Carafas v. LaVallee*, the Court granted the petitioner's *writ of certiorari* though he was no longer in custody and his sentence complete.[20] The Court held the completion of a petitioner's sentence prior to the final adjudication of his pending habeas corpus petition challenging a state-court conviction neither terminated jurisdiction with respect to the application, nor did it moot the merits of the case, because collateral consequences of the conviction remained.[21]

(7)     Concerning some collateral consequences the *Carafas* petitioner might face, the Court observed:

> In consequence of his conviction, he cannot engage in certain businesses; he cannot serve as an official of a labor union for a specified period of time; he cannot vote in any election held in New York State; he cannot serve as a juror. Because of these 'disabilities or burdens [which] may flow from' petitioner's conviction, he has 'a substantial stake in the judgment of conviction which survives the satisfaction of the sentence imposed on him.' On account of these 'collateral consequences,' the case is not moot.[22]

---

[20]   391 U.S. 234, 236 (1968).

[21]   *See id.* at 237-40.

[22]   *Id.* at 237-38 (alteration in original) (citations omitted) (quoting *Fiswick v. United States*, 329 U.S. 211, 222 (1946)); *but cf. Spencer v. Kemna*, 523 U.S. 1, 12-14 (1998) (declining to extend the collateral consequences presumption in federal habeas cases to parole revocations to satisfy Article III standing).

(8)     Aside from the collateral consequences holding, the unique procedural posture in *Carafas* warrants some discussion.  The *Carafas* appeal was filed in *federal court*, under the federal habeas corpus statute.[23]  Thus, a threshold issue to be determined was "whether the expiration of [a] petitioner's sentence, before his application was finally adjudicated and while it was awaiting appellate review, terminates *federal jurisdiction* with respect to the application."[24]

(9)     The Court's decision ultimately turned on its interpretation of the federal habeas statute, which in turn, resulted in the creation of the federal collateral consequences rule.

> [W]e conclude that under the statutory scheme, once the federal jurisdiction has attached in the District Court, it is not defeated by the release of the petitioner prior to completion of proceedings on such application.
>
> The federal habeas corpus statute requires that the applicant must be 'in custody' when the application for habeas corpus is filed. . . . [Petitioner] is suffering, and will continue to suffer, serious disabilities because of the law's complexities and not because of his fault, if his claim that he has been *illegally convicted* is meritorious. There is no need in the statute, the Constitution, or sound jurisprudence for denying to petitioner his ultimate day in court. . . . He should not be thwarted now and required to bear the consequences of assertedly unlawful conviction simply because the path has been so long that he has served

---

[23]   391 U.S. at 237-38; *see also* 28 U.S.C. § 2254(d) (1996) ("An application for a writ of habeas corpus on behalf of a *person in custody pursuant to the judgment of a State court* shall not be granted with respect to any claim that was adjudicated on the merits in State court" *unless* the decision was contrary to clearly established Federal law, or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." (emphasis added)).

[24]   *Carafas*, 391 U.S. at 237 (emphasis added).

his sentence. The federal habeas corpus statute does not require this result.[25]

Thus, the Court concluded that a petitioner need not remain "in custody" for a federal court to proceed to a final adjudication of the merits presented in a federal writ of habeas corpus.[26]

## B. DELAWARE'S TREATMENT OF COLLATERAL CONSEQUENCES AND ITS POSTCONVICTION PROCEDURAL RULES

(10) The Delaware Supreme Court first incorporated a collateral consequences concept in *Gural v. State*.[27] The *Gural* defendant was convicted of embezzlement and sentenced to three years of imprisonment.[28] His postconviction motion—filed under this Court's then-Rule 35—was denied.[29] He was subsequently released from custody while his appeal of that denial was pending.[30] Citing *Carafas*, Gural challenged the State's motion to dismiss for mootness.[31]

(11) Our Supreme Court ultimately dismissed his appeal as moot because he failed to demonstrate that, as a consequence of the instant conviction, certain

---

[25] *Id.* at 238-40 (emphasis added) (internal citation omitted).

[26] *Id.* at 237-42.

[27] 251 A.2d at 344-45.

[28] *Id.* at 344.

[29] *See id.*

[30] *Id.*

[31] *Id.* at 344-45.

disabilities or burdens were imposed upon him.[32] Unlike *Carafas*, the *Gural* defendant had a lengthy criminal record that otherwise overshadowed the merits of his postconviction appeal.[33] As such, no new collateral consequences were imposed or suffered on account of his instant conviction and his appeal was deemed meritless.[34]

(12) Two decades later, before Delaware courts ever had occasion to revisit *Gural*'s collateral consequences discussion, this Court's Criminal Rules were amended.[35] Rule 61 replaced the *Gural*-era Rule 35, which had offered "a remedy in lieu of *habeas corpus* and *coram nobis,* to the defendant who claims that his conviction was obtained or his sentence imposed in violation of his constitutional guaranties."[36] And Rule 61, by its now present terms, has now come to "govern[] the procedure on an application by a person *in custody*" seeking to collaterally attack his or her criminal conviction.[37]

(13) In one rare factual circumstance—*State v. Lewis*[38]—our Supreme Court

---

[32] *Id.* at 345.

[33] *Id.*; *see Carafas*, 391 U.S. at 237.

[34] *Gural,* 251 A.2d at 345.

[35] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990); *see also* Del. Super. Ct. Crim. R. 61.

[36] *State v. Lewis*, 797 A.2d 1198, 1200 (Del. 2002) (quoting *Johnson v. State*, 280 A.2d 712, 713 n.3 (Del. 1971)).

[37] Del. Super. Ct. Crim. R. 61(a)(1) (2022) (emphasis added).

[38] 797 A.2d 1198.

contextualized the dichotomy between present-day Rules 35(b) and 61 and *Gural's*

collateral consequences analysis under the prior embodiment of our postconviction

rule—former Rule 35. Their co-existence is understood thusly:

> While Rule 61 may provide relief comparable to a writ of *habeas corpus* or *coram nobis,* Rule 35(b), as it exists subsequent to the promulgation of Rule 61, appears on its face to permit a reduction of sentence at the discretion of the sentencing court.
>
> The equitable considerations presently allowable under *Gural* are not limited to the 'fairness' and 'interest of justice' exceptions to Rule 61(i). . . . *Gural* did not hold that a defendant can seek relief after the completion of a sentence only when there is a constitutional or legal defect alleged. In fact, *Gural* asserted no such defect. Rather, the Court held that collateral consequences, such as inability to engage in certain business activities or restricted civil rights, *could* be grounds to permit relief after the completion of a sentence. Such circumstantial factors are not considered under Rule 61(i) for the purposes of waiving a time limitation. The open language of Rule 35(b), however, can be plainly read as permitting such considerations.
>
> Furthermore, Rule 61(a) allows for postconviction relief *only* when the defendant is 'in custody or subject to fu[ture] custody' for the particular sentence being challenged.[39]

(14)  Most notably, the *Lewis* Court—reflecting one an earlier collateral

consequences discussion in *Guinn v. State*[40]—observed that upon satisfaction of a

sentence, postconviction relief "cannot be secured under Rule 61, because the

language of [Rule] 61(a) appears to create a standing bar. If the collateral

---

[39]  *Id.* at 1201 (alteration and emphasis added) (citations omitted).

[40]  1993 WL 144874.

consequences rule for mootness is to have any applicability at all, it must be available under Rule 35 as opposed to Rule 61."[41]

(15) This Court reaffirmed that principle later in *State v. Hinson*.[42] It concluded that "[a]ll courts in Delaware that have considered whether postconviction relief under Rule 61 is potentially available to a person who is not 'in custody or subject to future custody' for the challenged sentence have agreed that such relief under Rule 61 is not available."[43] Thus, having determined that a writ of error *coram nobis* had been unequivocally abolished in Delaware, Rule 61 is "the 'exclusive remedy for seeking to set aside a final judgment of conviction.'"[44] And it is clear that the scope of the Rule has narrowed through subsequent amendment; relief under the Rule is now available only to those "in custody." So it would seem the Court shouldn't apply the collateral consequences doctrine under present-day Rule 61 at all. But if made to, it should be a cautious enterprise given *Gural*'s own terms and the Rule's development since *Gural*.[45]

---

[41]  *Lewis*, 797 A.2d at 1201 (citing *Guinn,*1993 WL 144874, at *1).

[42]  2006 WL 337031.

[43]  *Id.* at *2 & n.8 (collecting cases).

[44]  *Id.* (quoting *Heron v. State,* 2001 WL 58742, at *1 (Del. Jan. 17, 2001)). In *Heron v. State*, the Supreme Court affirmed the Superior Court's treatment of a writ of error *coram nobis* as a postconviction motion under Rule 61 and denied the motion under the then three year limitations period. 2001 WL 58742, at *1.

[45]  *See* Order Amending Rule 61 of the Superior Court Rules of Criminal Procedure ¶ 1 (Del. Super. Ct. June 4, 2014) (amending Rule 61(a)(1) to purposefully prohibit petition by those who allege they are "subject to custody" due to a challenged conviction); *compare* Del. Super. Ct. Crim.

## C. IF AT ALL, A FIRST-TIME FELON MIGHT RESORT TO *GURAL* IN VERY LIMITED CIRCUMSTANCES.

(16)   Whether a felon faces collateral consequences under *Gural* has already been addressed, in *dictum*, in *Lewis* and *Guinn*.[46]  "[T]he [*Gural*] Court held that collateral consequences . . . *could be grounds to permit [certain] relief after the completion of a sentence*."[47]  But its very limited application was borne from the plain language of then-extant postconviction-relief Rule 35  "permitting such considerations;" whereas now relief under Rule 61 is available *only* "when the defendant is 'in custody' . . . for the particular sentence being challenged."[48]  In turn, now "[i]f the collateral consequences rule for mootness is to have any applicability at all, *it must be available under Rule 35 as opposed to Rule 61*."[49]

(17)   To be sure, the evolution of Delaware's collateral consequences decisions and postconviction rules are products of practical considerations that carefully balance the interests of finality and fairness in legal proceedings.  Finality

---

R. 61(a)(1) (2013) (pre-June 4, 2014 amendment), *with* Del. Super. Ct. Crim. R. 61(a)(1) (2015) (post-June 4, 2014 amendment).

[46]   Unlike "*obiter dicta*," which are non-binding, "by the way" comments, "*dictum*" is "judicial *dictum*" and is "a court's 'expression of opinion upon a point in a case argued by counsel and deliberately passed upon . . . though not essential to the disposition of the cause . . . [and] is entitled to much weight and should be followed unless it is erroneous." *Wild Meadows MHC, LLC v. Weidman*, 2020 WL 3889057, at *7 (Del. Super. Ct. July 10, 2020) (quoting *Cates v. Cates*, 619 N.E.2d 715, 717 (Ill. 1993)), *aff'd*, 250 A.3d 751 (Del. 2021).

[47]   *Lewis*, 797 A.2d at 1201 (emphasis added) (citing *Gural*, 251 A.2d at 344).

[48]   *Id.* (quoting *Guinn*, 1993 WL 144874, at *1).

[49]   *Id.* (emphasis added) (quoting *Guinn,*1993 WL 144874, at *1).

-12-

represents the notion "that at *some* point a criminal conviction reaches an end, a conclusion, a termination, [which] 'is essential to the operation of our criminal justice system.'"[50] Indeed, "limits on the collateral review of criminal judgments derive from concerns about finality. Statutes of limitations . . . for habeas corpus petitions by state prisoners[] obviously safeguard the repose of final criminal judgments."[51] So too do our own rules governing the timing of state post-sentence challenges.[52]

Notes one commentator:

[C]ollateral review threatens the public reputation of the criminal justice system. Without some visible and conclusive resolution to cases, a system of criminal justice lacks legitimacy. In Justice Harlan's memorable phrase: 'No one, not criminal defendants, not the judicial system, not society as a whole is benefited by a judgment providing a man shall tentatively go to jail today, but tomorrow and every day thereafter his continued incarceration shall be subject to fresh litigation on issues already resolved.' Scholars and judges who articulate this reputational concern typically focus on the public, warning that frequent relitigation of settled cases will undermine public confidence in the criminal justice system. Variations of that concern, however, focus on offenders and would-be offenders, maintaining that finality is essential to the deterrent effect of the criminal law, or to the effective rehabilitation of offenders.[53]

---

[50] *Prost v. Anderson*, 636 F.3d 578, 582-83 (10th Cir. 2011) (emphasis in original) (quoting *Teague v. Lane*, 489 U.S. 288, 309 (1989)).

[51] Ryan W. Scott, *In Defense of the Finality of Criminal Sentences on Collateral Review*, 4 WAKE FOREST J.L. & POL'Y 179, 188 (2014) (citations omitted).

[52] *See e.g.*, Del. Super. Ct. Crim. R. 35(b) (severely curtailing sentence-reduction applications made more than 90 days after sentencing); Del. Super. Ct. Crim. R. 61(i)(1) (requiring a post-conviction petition challenging a conviction to be filed within a year of the conviction becoming final).

[53] Scott, *supra* note 51, at 187-88 (citations omitted).

(18)   Undoubtedly influenced by the same considerations of practicality, finality, and use of judicial resources, the United State Supreme Court began to significantly restrict the scope of federal habeas review post-*Carafas*.[54]   Some postconviction claims are no longer cognizable if state courts offer a separate mechanism for review.[55]   Procedural default rules prevent petitioners from circumventing independent and adequate state law grounds for sustaining their convictions.[56]   A heightened harmless error standard is applied "to reflect the finality interests at stake in the post-conviction context."[57]   And "to prevent an endless cycle of petition and re-petition by prisoners with nothing but time on their hands," courts must strictly enforce the writ-rules.[58]

(19)   Delaware's rules governing collateral attacks on convictions do much

---

[54]   *See, e.g., Edwards v. Vannoy*, 141 S. Ct. 1547, 1570 (2021) ("The statute provides that 'writs of habeas corpus *may* be granted'—not that they *must* be granted. . . . Exercising this remedial discretion, the Court began to develop doctrines aimed at returning the Great Writ closer to its historic office." (Gorsuch, J., concurring) (emphasis in original) (quoting 28 U.S.C. § 2241(a)).

[55]   *See Stone v. Powell*, 428 U.S. 465, 481-82 (1976) ("[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.").

[56]   *See Wainwright v. Sykes*, 433 U.S. 72, 87 (1977) ("barring federal habeas review absent a showing of 'cause' and 'prejudice' attendant to a state procedural waiver, be applied to a waived objection to the admission of a confession at trial").

[57]   *Edwards*, 141 S. Ct. at 1570 (Gorsuch, J., concurring) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 633-38 (1993)).

[58]   *Id.* (Gorsuch, J., concurring) (citing *McCleskey v. Zant*, 499 U.S. 467, 489-93 (1991)).

the same.[59]

(20)  With this backdrop, dismissal of Mr. Martin's Rule 61 motion was proper. The Court's review of a Rule 61 motion must be conducted in accordance with the rule as it exists on the date of submission.[60] So Mr. Martin's application is subject to scrutiny under the modified, current version of the Rule.[61] As Rule 61 requires that a petitioner *must* be in custody, it is Mr. Martin's status as one no longer in custody that precludes him from obtaining the relief he seeks. This Court's mere supposition and unexamined suggestion that application of the collateral consequences doctrine is still viable under current Rule 61 was a misstep. It is not— neither for a first-time felon nor anyone who suggests he is a renewed first-time felon.

(21)  Thus, to answer the Supreme Court's first question, a person convicted of a felony for the first time may claim to face collateral consequences under *Gural v. State*, but such a claim is not cognizable under Rule 61 because of the Rule's now-clearly-defined scope and procedural bars.

---

[59]  Del. Super. Ct. Crim. R. 61(i)(2) (prohibiting successive petitions); *id*. at 61(i)(3) (barring grounds for relief not asserted in the proceedings leading to the judgment of conviction); *id*. at 61(i)(4) (disallowing the revisitation of issues previously adjudicated).

[60]  *Collins v. State*, 2015 WL 4717524, at *1 (Del. Aug. 6, 2015).

[61]  *Purnell v. State*, 254 A.3d 1053, 1094 (Del. 2021) (holding "a motion for postconviction relief is to be adjudicated in accordance with Rule 61 as it exists at the time the motion is filed" (citations omitted)); *see e.g.*, *State v. Dickenson*, 2020 WL 1227810, at *1 (Del. Super. Ct. Mar. 2, 2020) ("If a procedural bar exists, then the Court will not consider the merits of the postconviction claim." (citing *Younger*, 580 A.2d at 554)).

(22) If, however, the collateral consequences doctrine were to apply to current Rule 61—which the Court believes it does not—it should be limited to just the circumstances denoted by Rule 61's most important procedural-bar exceptions. That is the otherwise-mooted Rule 61 prayer for relief might be deemed to survive via the collateral consequences rule *only* where the movant: (a) pleads with particularity a strong inference of actual innocence; or (b) asserts a claim that the Court lacked jurisdiction to convict and sentence her.

(23) Here, Mr. Martin does not allege he is actually innocent or that the Court lacks jurisdiction. Rather, Mr. Martin alleges his trial counsel was ineffective for failing to have the duffle bag of drugs in the back seat of his car suppressed.[62] Just as such a claim wouldn't warrant federal habeas review, it should not warrant the extension of Rule 61's reach.[63]

(24) But these are not—even under *Gural*—the only limitations on any potential Rule 61 collateral consequences application. Even if Mr. Martin were to satisfy the exceptions suggested (which he hasn't), he must also plead specific and

---

[62] *See Martin,* 2021 WL 1030348, at *1.

[63] "[F]ederal courts will not collaterally review claims of unreasonable search and seizure when the defendant 'has previously been afforded an opportunity for full and fair litigation of his claim in the state court.'" *State v. Conyers*, 413 A.2d 1264, 1265-66 (Del. Super. Ct. 1979) (quoting *Stone*, 428 U.S. at 469); *Stone*, 428 U.S. at 489-90 ("The costs of applying the exclusionary rule even at trial and on direct review are well known: the focus of the trial, and the attention of the participants therein, are diverted from the ultimate question of guilt or innocence that should be the central concern in a criminal proceeding." (citations omitted)).

particular collateral consequences of his conviction to avoid mootness.

(25)   Mr. Martin asserts he "(i) lost the right to serve on a jury, (ii) lost the right to own or possess a firearm or ammunition, (iii) incurred the burden of potentially being disqualified from public employers and federal student loans, and (iv) incurred the stigma of being a convicted felon nearly ten years after receiving his pardon."[64]  But this simple listing of consequences cannot possibly satisfy the specificity and particularity requirement because these consequences are shared among all felons—first-time or other.[65]

### D. NO MATTER WHAT, ONE PARDONED OF A FELONY CONVICTION NEED NOT BE TREATED AS ONE CHALLENGING HIS VERY FIRST.

(26)   It would seem the answer to the second question is easily subsumed within the answer to the first since neither a first-time felon nor one pardoned may resort to the collateral consequences doctrine under Rule 61 any longer.  But given the mandate of the Remand Order, the Court should explain the general effect of a pardon of a prior felony conviction in any collateral consequences analysis that might be envisaged.

---

[64]   Remand Order ¶ 10 (citation omitted)).

[65]   Both our Supreme Court and the United States Supreme Court have confirmed the specificity requirement.  *Gural* itself acknowledged collateral consequences cannot be stated in "general terms, with no specificity."  251 A.2d at 345.  And while *Carafas* first suggested that voting or serving on a jury could be sufficient collateral consequences to overcome mootness, the United States Supreme Court later in *Spencer v. Kemna* rejected decades of case law "accept[ing] the most generalized and hypothetical of consequences as sufficient to avoid mootness in challenges to conviction."  523 U.S. at 10.

(27) "Except as otherwise provided by the Delaware Constitution, or expressly by any provision of the Delaware Code or any court rule, the granting of an unconditional pardon by the Governor shall have the effect of fully restoring all civil rights to the person pardoned."[66] But the Governor of Delaware may issue a pardon either with conditions or unconditionally.[67] So a pardoned felon, depending on the conditions imposed by the pardon, might regain many or most civic abilities lost by the felony conviction, but not all.

(28) And even an unconditionally-pardoned felony conviction still has lasting effects; "[w]hile the pardon may have forgiven [a] conviction, it d[oes] not obliterate the public memory of the offense."[68]

(29) In other words, a pardon doesn't necessarily create a clean slate.[69] And that is an important consideration when balancing the various finality considerations mentioned before, the now-express limitations of our state postconviction rule, and fairness considerations. Put simply, one pardoned of a felony does not sit in precisely the same place as one first-convicted. And any resort to a collateral consequences rule, if any remains, need not be the same for the two.

---

[66] DEL. CODE ANN. tit. 11, § 4364 (2022); *see Heath v. State*, 983 A.2d 77, 82 (Del. 2009); *see e.g.*, DEL. CODE ANN. tit. 10, § 4509(b)(6) (disqualifying from jury service "[c]onvicted felons who have not had their civil rights *restored*" (emphasis added)).

[67] *Heath*, 983 A.2d at 80; DEL. CODE ANN. tit. 11, § 4364 (2022).

[68] *State v. Skinner*, 632 A.2d 82, 85 (Del. 1993) (citations omitted).

[69] *Id.* at 85 ("[A] pardon does not erase guilt.").

(30)   So, to answer the Supreme Court's second question:  when balancing the finality, resource, and fairness factors that contour any collateral consequences rule, a pardoned felon need not necessarily be treated the same as one challenging his first conviction.

## CONCLUSION

(31)   The collateral consequences doctrine is no longer applicable under this Court's current Rule 61.  Having now had an opportunity to engage in this more thorough examination, the Court finds its reference to such in its earlier *sua sponte* dismissal order was unnecessary.  As now expressed, Rule 61's "in custody" requirement is without exception.  That said, were collateral consequences exceptions to that requirement crafted, the Court suggests it should compel—from *any* movant: (i) specificity; and (ii) a showing of a strong inference of actual innocence or that the Court lacked jurisdiction to convict and sentence in the matter.  Lastly, a pardoned felon need not be treated the same as a first-time felon for purposes of applying a potential collateral consequences rule under Rule 61.  So as for Mr. Martin, he cannot resort to the collateral consequences doctrine to revive his Rule 61 postconviction motion.

**SO ANSWERED** this 28th day of November, 2022.

Paul R. Wallace, Judge

-19-