2010 ME 66

**Faith (Davidson) PRICE**

v.

**STATE of Maine.**

Supreme Judicial Court of Maine.

Argued: June 15, 2010.

Decided: July 20, 2010.

Mary Davis, Esq. (orally), Tisdale & Davis, P.A., Portland, ME, Attorney for Faith (Davidson) Price.

Geoffrey Rushlau, District Attorney, Andrew Wright, Asst. Dist. Atty. (orally), Prosecutorial District VI, Wiscasset, ME, Attorneys for the State of Maine.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

Concurrence: ALEXANDER, J.

MEAD, J.

[¶ 1] Faith (Davidson) Price appeals from a judgment of the Superior Court (Sagadahoc County, *Horton, J.*) dismissing her petition for post-conviction review as moot on the ground that she had voluntarily completed the sentence imposed in the underlying criminal case. We granted a certificate of probable cause pursuant to M.R.App. P. 19(a) and now vacate the judgment.

## I. BACKGROUND

[¶ 2] The procedural background is not disputed. In October 2008, Faith Price pleaded guilty to a charge of operating after revocation (Class D), 29–A M.R.S. § 2557–A(2)(A) (2008).[1] She was sentenced to thirty days in the Sagadahoc County Jail and a $500 fine. She did not take a direct appeal. Price filed one motion for a short stay of the jail sentence that was denied and a second that was granted. She paid her fine in full.

[¶ 3] While serving her sentence, Price filed the petition for post-conviction review that is now at issue. The petition alleges

---

1. Title 29–A M.R.S. § 2557–A(2)(A) has since been amended, though not in any way that affects the present case. P.L. 2009, ch. 54, § 5 (effective Apr. 22, 2009) (codified at 29–A M.R.S. § 2557–A(2)(A) (2009)).

that she pleaded guilty only because her trial attorney incorrectly informed her that she would still be able to obtain a license and legally drive in any state except Maine. Price did not request bail pending disposition. The State originally moved to dismiss the petition on jurisdictional grounds, then abandoned that position and moved to dismiss on the ground that the petition was moot.

[¶ 4] The Superior Court agreed and dismissed the petition as moot after finding that Price had voluntarily completed her sentence and paid her fine. Price's motion to reconsider was denied. We granted a certificate of probable cause to consider three issues, two of which we discuss below: (1) whether post-conviction review is available to Price given that she has already served her sentence, and (2) if so, whether the distinction between serving a sentence voluntarily or involuntarily has any relevance in a proceeding for post-conviction review.

## II. DISCUSSION

[¶ 5] The State originally challenged the Superior Court's jurisdiction to hear Price's petition. The court recognized that the governing statute allowed Price to bring a petition for post-conviction review if she could demonstrate that her conviction directly resulted in a "[p]resent restraint or impediment" in the form of "[i]ncarceration pursuant to the sentence imposed." 15 M.R.S. § 2124(1)(A) (2009). At the time she filed her petition, Davidson was serving a sentence of incarceration as a result of her operating after revocation conviction, meaning that she was under a "present restraint." Accordingly, the court had jurisdiction. *See Carter v. State*, 452 A.2d 1201, 1202 (Me.1982) ("The [post-conviction] statute required that [the petitioner] be incarcerated when he filed his petition—it did not require

that he remain incarcerated until the petition was finally reviewed.").

[¶ 6] Having determined that the trial court had jurisdiction to hear Price's petition, we next examine whether the petition was properly dismissed as moot because Price had "voluntarily" completed her sentence before it was heard. The doctrine of mootness is based on the principle that a court should not decide an issue that has "lost [its] controversial vitality." *State v. Jordan*, 1998 ME 174, ¶ 10, 716 A.2d 1004, 1006. The test is "whether sufficient practical effects would flow from a retrial to justify the expenditure of limited judicial resources." *Id.* We recognize three exceptions to technical mootness: (1) when sufficient collateral consequences will result from a resolution of the issue at bar to justify relief; (2) when the question presented is of great public interest; or (3) when the issue presented is capable of repetition, but may escape appellate review because of its fleeting nature. *Lewis v. State*, 2000 ME 44, ¶ 4, 747 A.2d 1191, 1192. Only the first exception is applicable here.

[¶ 7] In Lewis, we held that "[w]hen a petitioner is challenging a conviction, we presume that collateral consequences exist." 2000 ME 44, ¶ 6, 747 A.2d at 1193. We went on to say that "[i]t is only when a petitioner has voluntarily completed a sentence that the challenge to a conviction may be dismissed as moot." *Id.* In *State v. Gach*, we again said that collateral consequences are presumed when a petitioner challenges a conviction on post-conviction review, and therefore observed that "[t]he mootness doctrine will not preclude [a petitioner] from pursuing a petition for post-conviction review so long as he brings his petition prior to the completion of his sentence." 2006 ME 82, ¶ 11, 901 A.2d 184, 187. We reiterated that a petition may be dismissed as moot only if the petitioner

has voluntarily completed a sentence. *Id.* Doing no more than applying *Lewis* and *Gach,* we would conclude that because Price is challenging her conviction in a petition filed before the completion of her sentence, the Superior Court erred in dismissing it as moot.

[¶ 8]   Price urges us to go further, however, asserting that the distinction between voluntarily and involuntarily serving the underlying sentence is simply not germane when a conviction is challenged on post-conviction review.   We agree.

[¶ 9]   When a defendant takes a direct appeal, she is challenging what was known to her at the end of the trial, for example the evidence that was admitted, rulings made by the court, statements made by the prosecutor, or jury instructions.   In a petition for post-conviction review, on the other hand, the defendant often challenges what was not known to her at the time the trial ends and her sentence begins.   The lay defendant may not know that she was deprived of the effective assistance of counsel at trial until she speaks with a new attorney after the fact.   She may not discover until her sentence has begun that things she thought were investigated were not, people she thought were interviewed were not, or a juror or a participant in the trial had a previously unknown bias.   Or, as Price alleges here, she may not learn until after she pleads guilty that the key legal advice she relied upon in making that decision was wrong.   The defendant does not waive a potential ground for post-conviction review in such situations by "voluntarily" beginning her sentence before filing a petition, because one cannot waive what one does not know.   If there is not a knowing waiver, then the defendant cannot

be said to have served the sentence voluntarily.

[¶ 10]   This essential difference in the nature of post-conviction review as opposed to direct appeal—what is not known at the end of trial versus what is known—explains why a defendant has a minimum of one year to file the former, and only twenty-one days to file the latter.   15 M.R.S. § 2128(5) (2009); M.R.App. P. 2(b)(2)(A).   It is also the basis for our holding today that so long as a petition for post-conviction review challenging a conviction satisfies statutory requirements,[2] it may not later be dismissed as moot simply because the underlying sentence has been completed.[3]   In the context of post-conviction review, the voluntary-involuntary distinction mentioned in *Gach* and *Lewis* has no utility.   *Gach,* 2006 ME 82, ¶ 11, 901 A.2d at 187; *Lewis,* 2000 ME 44, ¶ 6, 747 A.2d at 1193.

[¶ 11]   Our holding finds support in the statute setting out the jurisdictional prerequisites to filing a post-conviction petition, which gives a court jurisdiction over a petition following "[a] sentence of unconditional discharge resulting from a criminal judgment, for a period of 2 years following the date of sentence."   15 M.R.S. § 2124(1)(C).   Unlike a sentence involving incarceration, an unconditional discharge cannot be "completed" either voluntarily or involuntarily; it simply exists unless vacated on direct appeal or by the post-conviction review process.

[¶ 12]   Given that the Legislature has determined that the consequences of a bare conviction standing alone without any tangible penalty are sufficiently important to warrant post-conviction review, a con-

---

2.   *See* 15 M.R.S. §§ 2121–2132 (2009).

3.   Our analysis applies when the conviction itself is challenged.   We do not decide today,

for example, whether a petition challenging the calculation of pre-trial detention credit is moot once the sentence has been completed.

viction accompanied by incarceration must be sufficient as well, regardless of how the sentence is served. It would be an illogical result to hold that a conviction involving the most severe penalty—deprivation of liberty—can only be challenged on post-conviction review if the sentence is actively resisted,[4] while the least severe can simply be challenged as a matter of right. To the extent that our past decisions involving post-conviction review petitions have suggested that the voluntary versus involuntary service of sentence analysis was appropriate in reviewing issues of mootness, we overrule them.

The entry is:

Judgment vacated; remanded for further proceedings consistent with this opinion.

ALEXANDER, J., concurring.

[¶ 13] I concur in and join the Court's opinion. I write separately to remind parties considering post-conviction relief from a conviction after a plea that success on a post-conviction petition is not the equivalent of a get-out-of-jail-free card. In fact, there is a distinct possibility that a successful post-conviction petitioner may end up in a worse position than before.

[¶ 14] The relief afforded a post-conviction petitioner who successfully challenges a conviction through a claim of inadequate advice about potential consequences of the conviction is to vacate the conviction, not to dismiss the charge. *See* 15 M.R.S. § 2130 (2009) (listing the relief that may be considered in granting post conviction relief).

[¶ 15] With the conviction vacated, the underlying case returns to the active criminal trial docket, and the petitioner is placed in the same position he or she was in immediately before the plea proceeding. That may be in jail, awaiting trial, unable to make bail, or in the community on bail but subject to bail conditions such as limitations on driving, or drinking, or contact with certain other individuals.

[¶ 16] If the petitioner is again convicted after either a trial or another plea, he or she is subject to a renewed sentence, but with an important difference. Having successfully attacked the conviction and the resulting sentence, the petitioner loses the benefit of any bargain with the prosecution or the court that led to the original conviction and sentence. On resentencing, the petitioner is subject to the full range of sentencing options allowed by law, here the operating after suspension statute, 29–A M.R.S. § 2557–A(2)(A) (2008). The potential sentence is not capped by the sentence that was imposed after the original plea.

[¶ 17] This year, the United States Supreme Court has reminded us of that risk in very explicit terms. In *Padilla v. Kentucky*, 559 U.S. ——, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), the Court addressed a case, much like the case before us today, in which the post-conviction petitioner asserted that, prior to entering a plea, the petitioner had received incorrect advice from counsel regarding the potential collateral consequences of the conviction. In *Padilla*, the consequences related to immigration status; here they relate to suspension of driving privileges. In both cases, the petitioner succeeded in vacating the original conviction.

[¶ 18] In *Padilla*, the Court reminded us of the risks of post-conviction success:

---

4. Under the State's position, a defendant who resists serving her sentence at all costs, perhaps even illegally, has a better argument for not dismissing a later post-conviction petition as moot than one who simply obeys the court's command and serves her sentence.

The nature of relief secured by a successful collateral challenge to a guilty plea—an opportunity to withdraw the plea and proceed to trial—imposes its own significant limiting principle: Those who collaterally attack their guilty pleas lose the benefit of the bargain obtained as a result of the plea. Thus, a different calculus informs whether it is wise to challenge a guilty plea in a habeas proceeding because, ultimately, the challenge may result in a *less favorable* outcome for the defendant, whereas a collateral challenge to a conviction obtained after a jury trial has no similar downside potential.

*Id.*, 130 S.Ct. at 1485–86 (emphasis in original).

[¶ 19] The same must be said here. Those who successfully challenge a conviction resulting from a plea, based on claimed inadequacy of advice about potential consequences that may, or may not, have made a difference when deciding to enter a plea rather than proceed to trial, lose the benefit of any bargain that resulted in a reduced sentence or dismissal of other related charges. They return to court in the status they were in prior to entry of the plea, and subject to the full range of sentences and charges that existed at that time, should they again be convicted after trial or plea.