IN THE SUPREME COURT OF THE STATE OF DELAWARE

DARNELL MARTIN, § 
 § No. 112, 2021
Defendant Below, §
Appellant, § Court Below:  Superior Court
 § of the State of Delaware
v. §
 § Cr. ID No. 1702005493 (N)
STATE OF DELAWARE, §
 §
Plaintiff Below, §
Appellee. §

Submitted:  July 12, 2023
Decided:    October 9, 2023

Before **SEITZ**, Chief Justice; **VALIHURA**, **TRAYNOR**, **LEGROW**, and **GRIFFITHS**, Justices.

Upon appeal from the Superior Court of the State of Delaware. **REVERSED AND REMANDED**.

Benjamin S. Gifford, IV, Esquire, The Law Office of Benjamin S. Gifford IV, Wilmington, DE, *Attorney for Defendant Below, Appellant*.

Brian L. Arban, Esquire, Deputy Attorney General, Department of Justice, Wilmington, DE, *Attorney for Plaintiff Below, Appellee.*

Dwayne J. Bensing, Esquire, American Civil Liberties Union Foundation of Delaware, Wilmington, DE and Brendan Bernicker, Esquire, Megha Ram, Esquire, Roderick & Solange Macarthur Justice Center, Washington, DC, *as Amici Curiae American Civil Liberties Union Foundation of Delaware, Roderick & Solange MacArthur Justice Center, and the Innocence Network in support of Defendant Below, Appellant.*

**LEGROW**, Justice:

In 2013, the defendant below-appellant, Darnell Martin, received an unconditional gubernatorial pardon for his previous criminal convictions, which included several felony convictions. Several years later, Martin was arrested and charged with new offenses. After his convictions for those charges were affirmed on direct appeal, he filed a motion for postconviction relief, arguing that his trial counsel was ineffective. More than two years passed as the parties briefed Martin's motion and the trial court considered it. During that time, Martin served his prison sentence and his term of probation. He was discharged from probation while the postconviction motion was under advisement with the Superior Court.

After Martin's probation was discharged, the Superior Court dismissed his postconviction motion as moot, concluding that he no longer was "in custody" as required by Rule 61(a) and, given his extensive criminal history, he would not suffer any collateral consequences as a result of the convictions he was challenging. When the Superior Court dismissed the motion, it was not aware that Martin's previous convictions had been pardoned. Martin appealed, and we remanded to the Superior Court to further consider the effect of Martin's pardon, including whether a pardoned defendant suffers collateral consequences in the same manner as a first-time felon and therefore should not have his postconviction motion mooted if he is released from custody before the motion is resolved. The Superior Court concluded that the collateral consequences doctrine, which this Court adopted more than 50 years ago

based on United States Supreme Court precedent, has no continuing application in postconviction proceedings in Delaware.

Martin's appeal then returned to this Court, where he continues to challenge the dismissal of his motion and the Superior Court's application of the mootness doctrine. Having carefully considered the Superior Court's decision and the parties' submissions, we conclude that the Superior Court erred in dismissing Martin's postconviction motion as moot. Based on the applicable rule's language and structure and the collateral consequences exception's history, we hold that the collateral consequences exception to the mootness doctrine continues to apply in cases, like Martin's, where a movant's release from custody during postconviction proceedings would otherwise extinguish his standing to seek postconviction relief. Martin adequately pleaded that he faces collateral consequences arising from these convictions because he was unconditionally pardoned for all his previous crimes. We therefore reverse the Superior Court's order and remand this case for further proceedings.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The factual background relevant to this appeal is undisputed and relatively uncomplicated. Martin was arrested on several drug-related offenses in February 2017. After the Superior Court denied his motion to suppress evidence obtained during a search of his vehicle, Martin waived his right to a jury trial and agreed to a

2

stipulated bench trial.[1]  The Superior Court convicted Martin on January 9, 2018 of

Drug Dealing (Marijuana) and Aggravated Possession (Marijuana).  The Aggravated

Possession charge was a lesser-included offense of the Drug Dealing charge, so the

two convictions merged for sentencing purposes.[2]  The Superior Court sentenced

Martin to 25 years at Level V, suspended after 2 years for 18 months of probation.[3]

Martin appealed his conviction to this Court, arguing that the Superior Court

erred in denying his motion to suppress evidence.  We affirmed Martin's conviction,[4]

and he then filed a timely *pro se* motion for postconviction relief and a motion to

appoint counsel under Superior Court Criminal Rule 61.

### A. Martin Files the Postconviction Motion

The Superior Court granted Martin's motion for counsel, and postconviction

counsel was appointed on April 4, 2019.  The Superior Court ordered postconviction

counsel to file an amended postconviction motion or a motion to withdraw by July

12, 2019.  Postconviction counsel requested three extensions of that deadline, all of

which the Superior Court granted.  Postconviction counsel filed an amended motion

for postconviction relief on December 3, 2019, arguing that Martin's trial counsel

was ineffective because he failed to identify the correct legal basis to suppress the

---

[1] App. to Supp. Opening Br. at A43–114 (suppression hearing transcript); *id*. at A115–23 (final case review transcript).
[2] *Id*. at A134 (trial and sentencing transcript).
[3] *Id*. at A135–36 (sentencing order).
[4] *Martin v. State*, 195 A.3d 1198, 2018 WL 4959037, at *1 (Del. Oct. 12, 2018) (TABLE).

search of the vehicle. Martin's trial counsel and the State responded to the amended postconviction motion, and Martin filed a reply on August 13, 2020.

On November 30, 2020, the Superior Court requested supplemental briefing from the parties regarding the application of Rule 61(i)(4) and *Green v. State*[5] to Martin's postconviction motion. The parties filed simultaneous responses on December 31, 2020.

On February 24, 2021, Martin completed his probation sentence and was discharged from probation. On March 17, 2021, the Superior Court dismissed Martin's amended postconviction motion *sua sponte*, holding that his motion was moot because he "completed his sentence upon his full discharge from probation" and he therefore was "released from all 'custody' under the conviction" he sought to challenge.[6] The Superior Court further concluded that Martin's "lengthy criminal history," including "numerous prior felony drug convictions," meant that he would not suffer any collateral consequences as a result of the Drug Dealing conviction at issue in this case.[7]

### B. The First Appeal

Martin appealed the Superior Court's order of dismissal, arguing that the Superior Court erred in concluding that he would not suffer any collateral

---

[5] 238 A.3d 160 (Del. 2020).
[6] *Martin v. State*, 2021 WL 1030348, at *1 (Del. Super. Mar. 17, 2021).
[7] *Id*.

4

consequences from the Drug Dealing conviction. Martin pointed out that all his previous convictions were pardoned in 2013, several years before his conviction in this case. He therefore asserted that the Superior Court erred in concluding that his amended postconviction motion was moot because the court incorrectly concluded that no collateral consequences arose from his conviction.

Martin relied on *Gural v. State*, in which this Court held that the completion of a sentence renders a postconviction decision moot unless, "in consequence of the conviction or sentence, the defendant suffers collateral legal disabilities or burdens, in which case the defendant is considered to have a sufficient stake in the conviction or sentence to survive the satisfaction of the sentence and to permit him to obtain a review or institute a challenge."[8] Martin argued that the gubernatorial pardon he obtained in 2013 erased his criminal record completely, such that he was subjected to all the collateral consequences of a first-time felon when he was convicted in 2018, including the loss of his rights to serve on a jury or possess a deadly weapon, along with the negative effects on his ability to obtain employment or receive federal student loans.[9]

In response, the State denied that the Superior Court abused its discretion in dismissing Martin's motion, arguing that Martin's claimed collateral consequences

---

[8] 251 A.2d 344, 345 (Del. 1969).
[9] Opening Br. at 17–20.

5

were hypothetical, speculative, and amounted to "generalizations applicable to all convicted felons."[10] The State alternatively argued that Martin's postconviction motion could be denied on its merits.

After considering the parties' briefs, we remanded the matter to the Superior Court to consider the collateral consequences issue (the "Remand Order").[11] In the Remand Order, we noted that "the standing issue was raised by the court *sua sponte*; as a result, the Superior Court did not receive submissions regarding, and did not consider in its order, the effect of the pardon on the collateral consequences analysis."[12] We therefore asked the Superior Court to address two issues on remand: (i) "whether a person convicted of a felony for the first time faces collateral consequences under *Gural*"; and (ii) "whether a person who has received a pardon must be treated the same as a first-time felon for purposes of analyzing the collateral consequences rule in connection with resolving a motion for postconviction relief."[13] The Remand Order also permitted the Superior Court to make further factual findings and legal rulings that it deemed necessary to enable appellate review.[14] We

---

[10] Answering Br. at 12.
[11] *Martin v. State*, No. 112, 2021 (Del. Oct. 28, 2021) (Order) (hereinafter cited as "Remand Order").
[12] *Id*. at 6.
[13] *Id*. at 5.
[14] *Id*. at 6–7.

6

retained jurisdiction to consider Martin's appeal after the Superior Court addressed the questions on remand.[15]

## C. Decision on Remand

Once the case was remanded, the Superior Court convened a status conference and requested briefing from both parties. In his supplemental memorandum to the Superior Court, Martin explained that he was pardoned on June 14, 2013 for all his previous criminal convictions and, as a result, he no longer was a felon.[16] When he was convicted in this case, he therefore "lost the rights that had been restored" by the unconditional pardon, including the right to serve on a jury and to own and possess a firearm, along with significant impairments to his ability to obtain employment—including employment with any government agency—and a temporary bar on his eligibility to receive federal student loans.[17] In response, the State conceded that "for purposes of reviewing Martin's postconviction motion for mootness, [he] is in the same position as someone convicted of a felony for the first time."[18] Nevertheless, the State contended that the collateral consequences on which Martin relied were broad generalizations applicable to all first-time felons and did not meet Martin's burden of showing particularized collateral consequences.[19]

---

[15] *Id*. at 6.
[16] App. to Supp. Opening Br. at A491.
[17] *Id.* at A489–90, A493.
[18] *Id.* at A509.
[19] *Id*. at A510.

7

After the parties completed briefing, the court conducted oral argument on May 24, 2022. On November 28, 2022, the Superior Court issued its order responding to the questions remanded to the court.[20] In its order after remand, the Superior Court held that: (i) "a person convicted of a felony for the first time may claim collateral consequences under *Gural v. State*, but such a claim is not cognizable under Rule 61 because of the Rule's now-clearly-defined scope and procedural bars";[21] and (ii) "when balancing the finality, resource, and fairness factors that contour any collateral consequences rule, a pardoned felon need not necessarily be treated the same as one challenging his first conviction."[22]

The Superior Court arrived at those answers after thoroughly reviewing federal and Delaware jurisprudence regarding collateral consequences and the development of the procedural rules governing postconviction relief. After examining that history, the Superior Court concluded that the collateral consequences of a conviction no longer operate as an exception to mootness for purposes of a defendant seeking postconviction relief in Delaware.[23]

The Superior Court reasoned that "the evolution of Delaware's collateral consequences decisions and postconviction rules are products of practical

---

[20] *State v. Martin*, 2022 WL 17244558 (Del. Super. Nov. 28, 2022).
[21] *Id*. at *6.
[22] *Id*. at *8.
[23] *Id*. at *3–4.

8

considerations that carefully balance the interests of finality and fairness in legal proceedings."[24] And, the court noted, Delaware's rules governing postconviction relief restrict collateral attacks on convictions to preserve judicial resources and promote finality.[25] Because Martin's postconviction motion is governed by the version of Rule 61 in effect at the time he filed his petition,[26] it is that rule, and not the rule at issue in *Gural*, that governs the Superior Court's jurisdiction over Martin's motion. The Superior Court reasoned that collateral consequences are not a cognizable exception to mootness under current Rule 61.[27]

The Superior Court further held that, if collateral consequences have any relevance under current Rule 61, they only should be considered when a movant can satisfy Rule 61's procedural-bar exceptions by (a) pleading with particularity a strong inference of actual innocence; or (b) asserting a claim that the Superior Court lacked jurisdiction over the case.[28] Martin, the Superior Court correctly noted, had not attempted to plead either of those exceptions. Furthermore, the Superior Court held that a movant meeting one of those exceptions also should be required to plead

---

[24] *Id*. at *5.
[25] *Id*. (citing Super. Ct. Crim. R. 61(i)(2)–(4)).
[26] *Purnell v. State*, 254 A.3d 1053, 1094 (Del. 2021) ("a motion for postconviction relief is to be adjudicated in accordance with Rule 61 as it exists at the time the motion is filed.").
[27] *State v. Martin*, 2022 WL 17244558, at *6.
[28] *Id*. at *7.

"specific and particular collateral consequences of his conviction to avoid mootness."[29]

Finally, although its previous holdings effectively rendered the question academic, the Superior Court concluded that a pardoned felon need not be treated the same as a first-time felon under the collateral consequences doctrine because some pardons are conditional and even an unconditional pardon does not erase the public memory of the offense.[30] For all those reasons, the Superior Court concluded that Martin could not resort to the collateral consequences doctrine to revive his mooted Rule 61 motion.

**D. Supplemental Briefing**

Upon receiving the Superior Court's order on remand, this Court directed the parties to submit supplemental briefs addressing the Superior Court's order and the following:

> (i) *State v. Lewis*, 797 A.2d 1198 (Del. 2002), (ii) cases since *Lewis* that analyze whether collateral consequences exist under *Gural v. State*, 251 A.2d 344 (Del. 1969) (*see, e.g., Steck v. State*, 2015 WL 2357161, at *2 (Del. 2015); *Anderson v. State*, 2014 WL 7010017, at *1 (Del. 2014); *Keita v. State*, 2010 WL 4970743, at *1-2 (Del. 2010)), (iii) competing policy considerations of finality and fairness in legal proceedings, including the possibility that an individual could lose standing to challenge an unconstitutional conviction due to the length and complexities of postconviction proceedings rather than matters within the individual's control, and (iv) whether the "in custody" requirement

---

[29] *Id.*

[30] *Id.* at *7–8.

10

of Rule 61 applies at the time the Rule 61 motion is filed so that jurisdiction, once obtained, continues to final judgment.[31]

In his supplemental brief, Martin argues that the Superior Court erred in holding that collateral consequences are not relevant under Rule 61. Martin asserts that the authorities relied upon by the Superior Court stand in a distinct procedural posture to his own motion. He further contends that the Superior Court's holding conflates standing and mootness, and separate consideration of those two doctrines in the context of Delaware and federal precedent compels the following conclusions: (1) Martin had standing to file his postconviction motion because he was in custody at the time it was filed and the motion was not otherwise procedurally barred under Rule 61(i); and (2) the completion of Martin's sentence during the pendency of the postconviction proceedings did not moot the motion because Martin will continue to suffer collateral consequences as a result of the conviction. The cases relied upon by the Superior Court, Martin argues, all involve postconviction motions that were (a) filed after a defendant completed his sentence; or (b) otherwise barred under Rule 61(i).

The State, on the other hand, contends that the Superior Court properly dismissed Martin's motion as moot. The State argues that a movant seeking relief under Rule 61 must maintain standing throughout the pendency of the proceedings,

---

[31] D.I. 13 (12/20/22 letter from Dolph to counsel)

and Martin lost standing when he completed his sentence in February 2021. The State adopts the Superior Court's view of the collateral consequences doctrine, arguing that the doctrine no longer is relevant to Rule 61 based on this Court's 2002 decision in *Lewis v. State*, in which this Court held that, to the extent the collateral consequences doctrine has continued relevance, it only applies to motions for sentence modification filed under Rule 35, and not to motions for postconviction relief filed under Rule 61. Finally, the State argues in the alternative that if this Court concludes that collateral consequences offer an exception to mootness under Rule 61, Martin did not carry his burden of demonstrating the particularized consequences he will suffer from those convictions.

After receiving the parties' supplemental submissions,[32] this Court heard oral argument and took the matter under advisement.

## II. STANDARD OF REVIEW

We review the Superior Court's decision to deny postconviction relief for abuse of discretion, but legal and constitutional questions embedded in the trial court's decision are reviewed *de novo*.[33] The question of whether Martin's release from custody divested him of standing to continue to prosecute his postconviction

---

[32] In addition to the parties' briefs, the Court also received a brief in support of reversal filed by *Amici Curiae* the American Civil Liberties Union Foundation of Delaware, the Roderick & Solange MacArthur Justice Center ("MJC"), and the Innocence Network.
[33] *Swan v. State*, 28 A.3d 362, 382 (Del. 2011); *Ploof v. State*, 75 A.3d 840, 851 (Del. 2013).

12

motion is a legal question subject to *de novo* review. The application or construction

of a statute or court rule also is reviewed *de novo*.[34]

## III.   ANALYSIS

For the reasons set forth below, we conclude that a defendant who files a

timely postconviction motion while in custody under a Superior Court sentence, but

is released from custody before the motion is resolved, is not divested of standing if

the defendant can demonstrate that he continues to suffer collateral consequences

because of the conviction. Accordingly, because Martin pleaded those collateral

consequences in this case, we conclude that the Superior Court erred in dismissing

his motion, and we remand this action for proceedings on the merits of his

postconviction claims.

**A.   Martin had standing to move for postconviction relief, and the Superior Court erred by dismissing that motion without considering the collateral consequences of his conviction.**

We begin our analysis with the undisputed procedural posture of Martin's

postconviction motion, followed by a discussion of the precedents on which the

Superior Court and the State relied, the text and structure of Rule 61, and the

considerations of fairness and finality at issue in this case.

---

[34] *Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 66 (Del. 1993).

### 1. *Martin had standing to seek postconviction relief at the time he filed his motion.*

Although undisputed, the procedural background of Martin's motion is significant to our analysis, particularly because it distinguishes Martin's motion from much of the caselaw relied upon by the State and the trial court. First, when Martin filed his motion, he was in custody serving a Superior Court sentence. Second, Martin's motion was his first such motion under Rule 61, and it was filed within a year of his conviction becoming final. Finally, the State has not argued, and the record does not reflect, that any of Rule 61(i)'s other procedural bars apply to Martin's motion. In other words, other than completing his sentence while the Superior Court was considering the merits of his motion, Martin was entitled to seek relief under Rule 61.[35]

### 2. *The precedent relied upon by the Superior Court does not support its conclusion regarding the collateral consequences doctrine and mootness.*

The Superior Court concluded that Martin's completion of his sentence required dismissal of his postconviction motion "without further proceedings" because he lacked standing to obtain postconviction relief under Rule 61 and his claims thereunder were moot.[36] On remand, the Superior Court explained that the collateral consequences flowing from Martin's conviction were not an exception to

---

[35] Of course, the merits of Martin's motion are an entirely separate question, which the Superior Court has not yet addressed.

[36] *State v. Martin*, 2021 WL 1030348, at *1.

14

mootness because "Delaware [c]ourts have long and consistently held" that postconviction relief is not available to a defendant who is no longer "'in custody' under a sentence for the challenged conviction."[37]

The court began its analysis of this Delaware precedent by discussing *Gural*, which was issued one year after the United States Supreme Court's decision in *Carafas v. LaVallee*.[38] In *Carafas*, the Supreme Court held that completion of the petitioner's sentence did not terminate jurisdiction over his pending habeas corpus petition or moot the merits of the case. As the *Carafas* Court explained, various "disabilities or burdens" may flow from a conviction and survive the satisfaction of a sentence, including prohibitions against engaging in certain businesses, working as a labor union official, voting, or serving as a juror.[39] Because of these "collateral consequences," the Supreme Court reasoned, a habeas corpus petition challenging a state-court criminal conviction is not mooted by the sentence's completion before the petition's final adjudication.[40]

The following year, in *Gural v. State*, this Court considered the State's motion to dismiss an appeal on the basis that the postconviction motion at issue was mooted by the defendant's completion of his sentence.[41] The defendant in *Gural* was

---

[37] *State v. Martin*, 2022 WL 17244558, at *1.
[38] 391 U.S. 234 (1968).
[39] *Id*. at 237–38.
[40] *Id*. at 238-40.
[41] *Gural*, 251 A.2d at 344.

convicted of embezzlement and sentenced to three years in prison. While still in custody, the defendant filed a motion for postconviction relief, which the Superior Court denied on its merits. The defendant appealed that decision but completed his sentence during the appeal's pendency. The State then sought to dismiss the appeal as moot.[42] This Court adopted *Carafas*'s collateral consequences rule "for its logic and fairness."[43] Ultimately, however, the *Gural* Court dismissed the appeal because the defendant only generally alleged collateral consequences, with no specificity, despite having an extensive criminal record that included at least seven previous convictions for similar conduct.[44]

In response to our remand order in this case, the Superior Court explained that *Gural* adopted the collateral consequences rule as an exception to mootness under Superior Court Criminal Rule 35, which at the time governed applications for both sentence modification and postconviction relief.[45] At the time we decided *Gural*, Rule 35 relevantly provided:

> The court may correct an illegal sentence at any time. A prisoner in custody under sentence and claiming a right to be released on the ground that such sentence was imposed in violation of the Constitution and laws of this State or the United States, or that the court imposing such sentence was without jurisdiction to do so, or that such sentence was in excess of the maximum sentence authorized by law *or is*

---

[42] *Id.*

[43] *Id.* at 345.

[44] *Id.*

[45] *See State v. Martin*, 2022 WL 17244558, at *3 ("Rule 61 replaced the *Gural*-era Rule 35, which had offered 'a remedy in lieu of *habeas corpus* and *coram nobis*, to the defendant who claims his conviction was obtained or his sentence imposed in violation of his constitutional guaranties.'")

16

*otherwise subject to collateral attack*, may file a motion at any time in the court which imposed such sentence to vacate, set aside, or correct the same. Unless the motion and the files and records of the case show to the satisfaction of the court that the prisoner is not entitled to relief, the court shall cause notice thereof to be served on the Attorney General, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction or that the sentence imposed was illegal or otherwise subject to collateral attack, or that there was such a denial or infringement of the constitutional rights of the prisoner as to render the judgment subject to collateral attack, the court shall vacate and set aside the judgment and shall discharge the prisoner or re-sentence him or grant a new trial or correct the sentence as may appear appropriate.[46]

Nearly two decades later, applications for postconviction relief were separated from motions to modify a sentence, and postconviction motions now are governed by Superior Court Criminal Rule 61. A later decision of this Court, *State v. Lewis*, distinguished between Rules 35 and 61 for purposes of the collateral consequences doctrine.[47] The State and the Superior Court view *Lewis* as signaling that the collateral consequences exception does not apply to motions under Rule 61.[48] We do not read *Lewis* so broadly.

In *Lewis*, the defendant pleaded guilty to second-degree assault and was sentenced to eight years at Level V incarceration, suspended for partial incarceration and probation.[49] The defendant violated his probation once but completed his

---

[46] *State v. Curran*, 116 A.2d 782 (Del. 1955) (quoting Super. Ct. Crim. R. 35(a)) (emphasis added).
[47] 797 A.2d 1198 (Del. 2002).
[48] State's Supp. Answering Br. at 28–31.
[49] *State v. Lewis*, 797 A.2d 1198, 1199 (Del. 2002).

sentence in its entirety by 1993. The defendant, however, was not a United States citizen and, in 2000, the federal government initiated deportation proceedings against him on the basis of his 1991 assault conviction and two other misdemeanor offenses. Lewis then filed a motion under Rule 35(b) to reduce his second-degree assault sentence to eleven months of incarceration so that the conviction would not fall within the class of criminal offenses subjecting him to deportation.[50] The Superior Court granted that motion, concluding that the "collateral consequences" exception adopted in *Gural* applied and provided a basis for relief under Rule 35.[51] The State appealed, arguing that the collateral consequences exception should not apply because Rule 35's purpose was to "[e]xamine the appropriateness of a sentence while it is still being served," and Rule 61 is the "only operative rule for postconviction relief."[52]

In *Lewis*, this Court disagreed with the State's position that a sentence's completion operated as an implied time limit on applications for relief under Rule 35.[53] The Court found that although Rule 35(b) contains a 90-day limitations period for sentence modification motions, the "extraordinary circumstances" exception to that 90-day period has no time bar, so the State's argument that the rule was limited

---

[50] *Id.*
[51] *Id.*
[52] *Id.* at 1200.
[53] *Id.* at 1200–01.

to the duration of a sentence was not consistent with the Rule's terms.[54]  The *Lewis*

Court further explained that the collateral consequences doctrine adopted in *Gural*

is more consistent with the discretion afforded to the Superior Court under Rule

35(b)'s exceptional circumstances inquiry than it is to the strictly defined pleading

requirements imposed on a defendant seeking to overcome Rule 61(i)'s procedural

bars.

The *Lewis* Court's distinction between the discretion afforded under Rule 35

and the considerations permitted under Rule 61 forms the basis for the State's

conclusion that this Court entirely abandoned the collateral consequences doctrine

in *Lewis*.[55]  The relevant passage provides:

> The comparison between the parameters of Rule 61and the scope of relief under Rule 35(b) is enlightening.  Rule 35(b) allows for a reduction of sentence without regard to the existence of a legal defect. Rule 35(b) states simply "[t]he court may reduce a sentence of imprisonment on a motion made within 90 days after the sentence is imposed."  After 90 days, the court will consider an application only in "extraordinary circumstances."  While Rule 61 may provide relief comparable to a writ of habeas corpus or coram nobis, Rule 35(b), as it exists subsequent to the promulgation of Rule 61, appears on its face to permit a reduction of sentence at the discretion of the sentencing court.

> The equitable considerations presently allowable under *Gural* are not limited to the "fairness" and "interest of justice" exceptions to Rule 61(i). Contrary to the assertion of the State in this case, *Gural* did not hold that a defendant can seek relief after the completion of a sentence only when there is a constitutional or legal defect alleged. In fact, *Gural* asserted no such defect.  Rather, the Court held that collateral

---

[54] *Id.*
[55] State's Supp. Answering Br. at 28–30.

19

consequences, such as inability to engage in certain business activities or restricted civil rights, could be grounds to permit relief after the completion of a sentence. *Gural*, 251 A.2d 344. Such circumstantial factors are not considered under Rule 61(i) for the purposes of waiving a time limitation. The open language of Rule 35(b), however, can be plainly read as permitting such considerations.

Furthermore, Rule 61(a) allows for postconviction relief only when the defendant is "in custody or subject to further custody" for the particular sentence being challenged. *Guinn v. State*, 625 A.2d 279 (Del. 1993). *The Guinn holding suggests, therefore, that relief after the completion of a sentence cannot be secured under Rule 61, because the language of 61(a) appears to create a standing bar. If the collateral consequences rule for mootness is to have any applicability at all, it must be available under Rule 35 as opposed to Rule 61.*[56]

The State focuses on the emphasized language at the conclusion of this passage to posit that "*Lewis*'s thorough examination of the history of Rule 61 shows that the collateral consequences rule is inapplicable" to that rule.[57] But the full passage quoted above shows that the *Lewis* Court focused its analysis on whether collateral consequences operated as an exception to Rule 35 (as "extraordinary circumstances") or as an exception to Rule 61(i)'s time-bar. The Court reasoned that the text of Rule 61(i) listed specific exceptions to that rule's time limitation, and the equitable considerations allowable under *Gural* do not fit within the inquiry permitted by Rule 61(i).

Although the *Lewis* Court went on to mention Rule 61(a)'s "in custody" requirement, the Court stated that Rule 61(a) "appears to create a standing bar,"

---

[56] *Lewis*, 797 A.2d at 1201 (emphasis added).
[57] State's Supp. Answering Br. at 31.

citing *Guinn v. State*. *Guinn*, however, involved a defendant who filed three separate postconviction motions, the last of which was not filed until four years after he completed his sentence.[58] The *Guinn* Court's holding that the defendant did not have standing to file a postconviction motion four years after completing his sentence is wholly distinct from the procedural background at issue in both *Gural* and in this case, where the defendants filed postconviction motions while in custody but were released from custody before final resolution of their respective motions. Accordingly, unlike the State, we cannot confidently conclude that the *Lewis* Court intended to abandon the collateral consequences doctrine in all Rule 61 cases, as opposed to only in those cases in which a defendant lacked standing at the time the postconviction motion was filed.

The cases decided in the 20 years since *Lewis* was issued strongly suggest that the decision was limited to holding that the collateral consequences doctrine does not apply when a postconviction motion is procedurally barred or the defendant is not in custody when the motion is filed. Although the Superior Court stated in its response to the remand order that "Delaware [c]ourts have long and consistently held that relief under Rule 61 is not available" for a defendant no longer in custody under a sentence for a challenged conviction, nearly every case the Superior Court cited for this proposition involves a defendant who did not file a Rule 61 motion until after

---

[58] *Guinn v. State*, 625 A.2d 279, 1993 WL 144874, at *1 (Del. Apr. 21, 1993) (TABLE).

21

he or she was released from custody for the challenged conviction.[59] The court cited

one Superior Court decision dismissing a postconviction motion when the defendant

was released from custody while the motion was pending, but that decision is not

binding on this Court, and in that case the defendant had a lengthy criminal history

unrelated to the challenged convictions.[60] Moreover, this Court has referred to the

collateral consequences doctrine several times post-*Lewis*, affirming Superior Court

---

[59] *See State v. Martin*, 2022 WL 17244558, at *1 nn.9–10. Of the cases cited by the Superior Court in support of this proposition, the following cases involved defendants who did not file their Rule 61 motions until after they were released from custody: *Steck v. State*, 115 A.3d 1216, 2015 WL 2357161 (Del. May 15, 2015) (TABLE) (defendant discharged from probation in July 2014 and filed postconviction motion challenging that conviction in December 2014); *Watson v. State*, 2015 WL 1456771 (Del. Mar. 30, 2015) (defendant discharged from probation in 2013 and filed postconviction motion challenging that conviction in June 2014); *Paul v. State*, 26 A.3d 214, 2011 WL 3585623 (Del. Aug. 15, 2011) (TABLE) (defendant completed sentence in February 2007 and filed postconviction motion in 2011); *Ruiz v. State*, 23 A.3d 866, 2011 WL 2651093 (Del. July 6, 2011) (TABLE) (defendant filed motion for postconviction relief ten years after release from custody); *Summers v. State*, 818 A.2d 971, 2003 WL 1524104 (Del. Mar. 20, 2003) (TABLE) (defendant filed motion for postconviction relief seven years after release from custody); *Guinn v. State*, 625 A.2d 279, 1993 WL 144874, at *1 (Del. Apr. 21, 1993) (TABLE) (defendant filed third motion for postconviction relief four years after release from custody); *State v. Cammille*, 2014 WL 2538491 (Del. Super. June 3, 2014) (defendant filed second motion for postconviction relief more than ten years after release from custody); *State v. Hinson*, 2006 WL 337031 (Del. Super. Feb. 10, 2006) (defendant filed motion for postconviction relief three years after release from custody). Other decisions cited by the State and the Superior Court arose under the same procedural posture. *See Fullman v. State*, 746 A.2d 276, 2000 WL 140114, at *1 (Del. Feb. 1, 2000) (TABLE) ("At the time [defendant] filed his motions for postconviction relief, he was no longer serving a sentence on the [challenged convictions.]"); *Baltazar v. State*, 108 A.3d 1224, 2015 WL 257334 (Del. Jan. 20, 2015) (TABLE) (defendant discharged from probation in August 2012 and filed motion for postconviction relief in October 2013).

[60] *State v. Jackson*, 2016 WL 7076990 (Del. Super. Dec. 5, 2016) (although not entirely clear from the Superior Court's order of dismissal, it seems likely that the defendant filed his postconviction motion shortly before he was released from custody).

22

dismissals of postconviction motions as moot because, *inter alia*, the movant did not cite any collateral consequences that would overcome mootness.[61]

In sum, there is no clear indication in the case law that *Gural*'s collateral consequences exception to mootness has no application in cases in which a defendant files a postconviction motion while in custody but is released from custody before final resolution of that motion. Moreover, as explained below, the plain language of Rule 61(a), the structure of Rule 61(i), and principles of fairness indicate that the existence of collateral consequences should trigger an exception to mootness in those cases.

### 3. The language and structure of Rule 61(a) and principles of fairness support continued application of the collateral consequences doctrine.

As the parties acknowledge, Rule 61 did not exist in its present form when *Gural* was decided, and a criminal defendant's right to collaterally attack a conviction has been transformed substantially in the intervening 50 years. Rule 61 now contains specific bars to relief[62] and imposes a substantial burden on a movant seeking to overcome those bars.[63] Rule 61's procedural bars appear in subsection

---

[61] *Watson v. State*, 2015 WL 1456771, at *2 (Del. Mar. 30, 2015); *Baltazar*, 2015 WL 257334, at *1; *Paul*, 2011 WL 3585623, at *1; *Pumphrey v. State*, 937 A.2d 140, 2007 WL 3087405, at *1 (Del. Oct. 23, 2007) (TABLE). Although those cases arose in various procedural contexts, they demonstrate that *Lewis* did not entirely remove collateral consequences as a relevant consideration under Rule 61.

[62] Super. Ct. Crim. R. 61(i)(1)–(4) (bars for timeliness, successive motions, procedural defaults, and former adjudications).

[63] Super. Ct. Crim. R. 61(i)(5) (providing that the bars for relief in Rule 61(i)(1)–(4) do not apply to a claim that the court lacked jurisdiction or to a claim that pleads with particularity that (i) new

(i), and the only exceptions to those bars are expressly contained within that subsection. In contrast, Rule 61's standing requirement appears in subsection (a)(1), which provides in its entirety:

> *Nature of proceeding.* This rule governs the procedure on an application by a person in custody under a sentence of this court seeking to set aside the judgment of conviction or a sentence of death on the ground that the court lacked jurisdiction or on any other ground that is a sufficient factual and legal basis for a collateral attack upon a criminal conviction or a capital sentence. A proceeding under this rule shall be known as a postconviction proceeding.

Rule 61(a)(1) does not contain any exceptions to the custody requirement, but simply governs the "procedure on an application" for postconviction relief. Nothing in the text of the rule, which was adopted after *Gural* and modified several times in the intervening years, indicates that it was intended to supersede *Gural*'s collateral consequences exception to mootness.[64] In contrast, as this Court found in *Lewis*, Rule 61(i)'s express exceptions to the bars to relief signal that collateral consequences cannot overcome those procedural bars.[65]

---

evidence exists that creates a strong inference that the movant is actually innocent in fact; or (ii) a new rule of constitutional law, made retroactive to cases on collateral review, applies and renders the conviction invalid).

[64] For similar reasons, there is no textual support in Rule 61(a) for the Superior Court's suggestion that, if the collateral consequences doctrine has a continued application in postconviction proceedings, it should apply only to cases in which the petitioner meets Rule 61's procedural bar exceptions (*i.e.*, actual innocence or lack of jurisdiction). *State v. Martin*, 2022 WL 17244558, at *7. Those exceptions apply to the bars to relief under Rule 61(i); there is no textual basis to extend them to the custody requirement in Rule 61(a).

[65] *See Lewis*, 797 A.2d at 1201 ("[t]he equitable considerations presently allowable under *Gural* are not limited to the 'fairness' and 'interest of justice' exceptions to Rule 61(i).").

In addition, allowing a movant to argue that his timely, procedurally permitted postconviction motion should not be mooted by the mere passage of time because collateral consequences continue to affect him is consistent with basic fairness principles. This case is a ready example. Martin filed his postconviction motion in December 2018, one month after his convictions were affirmed on direct appeal.[66] Briefing on his motion was not complete until August 2020.[67] The Court then ordered supplemental briefing on an issue not initially addressed by the parties, and those supplemental submissions were not completed until December 2020. Martin was released from custody in February 2021.[68]

None of the parties contend, and there is nothing in the record to suggest, that any of the participants intentionally delayed these proceedings to moot Martin's motion. Nevertheless, even with all the participants working diligently, factors entirely outside Martin's control delayed resolution of his motion for more than two years. Unfortunately, given the strains on the criminal justice system, including resource limitations exacerbated by the COVID-19 pandemic, the delays associated with Martin's motion are not unusual. And Rule 61 proceedings can become protracted even when resource limitations are not to blame; the Rule contains several due process components to ensure that the court has a complete record to decide

---

[66] App. to Supp. Opening Br. at A6.
[67] *Id*. at A6–11A.
[68] *Id*. at A11B.

postconviction claims, including a provision allowing the trial court to conduct an evidentiary hearing when necessary.[69] If the collateral consequences doctrine does not operate as an exception to mootness when a movant is released from custody while postconviction proceedings are underway, all but those serving extended sentences are likely to be barred from obtaining relief. This is significant, among other reasons, because postconviction proceedings are the only avenue available to a defendant who claims his Sixth Amendment right to counsel was infringed because counsel was ineffective at trial or on direct appeal.[70]

Despite the Rule's language and structure, the reality that delayed resolution of motions is not uncommon and sometimes necessary to obtain a complete record, and the fact that ineffective assistance of counsel claims cannot be raised until the postconviction stage, the State contends that the finality of convictions is undermined by permitting a defendant released from custody to continue to collaterally attack his conviction.[71] But as the Superior Court aptly explained in its decision after remand, the interests of finality are protected through numerous

---

[69] *See, e.g.* Super. Ct. Crim. R. 61(d)(3) (stay of proceedings when record not available); (d)(4) (preparation of transcript); (g) (expansion of record); (h) (evidentiary hearing).

[70] *See Guy v. State*, 82 A.3d 710, 715 (Del. 2013) ("This rule recognizes, as the United States Supreme Court recently noted, that in a jurisdiction like Delaware, where ineffective assistance of trial counsel may not be raised on direct appeal, the first postconviction 'proceeding is in many ways the equivalent of a prisoner's direct appeal as to the ineffective-assistance claim.'"); *Ploof*, 75 A.3d at 820 ("We generally decline to consider ineffective assistance of counsel claims in a direct appeal so that the defendant can fully investigate the issue in a postconviction proceeding.").

[71] State's Supp. Answering Br. at 38.

independent restrictions on the collateral review of criminal judgments.[72] Those restrictions include statutes of limitation for habeas corpus petitions, limitations on the scope of federal habeas review, application of the harmless error standard, and the procedural bars contained in Rule 61.[73] In view of those other restrictions, continued application of the collateral consequences exception to mootness in cases where the defendant completes his sentence while postconviction proceedings are pending would not substantially undermine the finality of convictions.

Finally, the continued application of the collateral consequences doctrine in cases like Martin's is consistent with decisions in other states assessing whether a sentence's satisfaction moots a pending postconviction petition. Several states that impose a custody requirement on defendants filing postconviction motions apply a collateral consequences exception when a defendant's release from custody would otherwise moot the petition.[74] Similarly, federal courts allow a defendant to continue

---

[72] *State v. Martin*, 2022 WL 17244558, at *5.

[73] *Id*. at *5–6.

[74] *Kranz v. State*, 187 A.3d 66, 75–76 (Md. 2018) (rejecting contention that petitioner's postconviction petition was mooted by his release from custody before the conclusion of appellate proceedings because "significant collateral consequences flow from the challenged convictions."); *Martinez-Hernandez v. State*, 380 P.3d 861, 864 (Nev. 2016) ("in instances where collateral consequences of a conviction exist, a habeas petition challenging the validity of a judgment of conviction does not become moot when the petitioner, who was in custody at the time the petition was filed, is released from custody subsequent to the filing of the petition."); *In re Chandler*, 67 A.3d 261, 265 (Vt. 2013) ("when a petitioner initiates a proceeding attacking the validity of a conviction for which he is still in custody, his release from custody will not moot the petition."); *Price v. State*, 1 A.3d 426, 429 (Me. 2010) ("so long as a petition for postconviction review challenging a conviction satisfies statutory requirements, it may not later be dismissed as moot simply because the underlying sentence has been completed.").

27

to challenge a criminal conviction after a sentence has expired if there is a collateral consequence to the conviction.[75] We hold that the same considerations apply to Rule 61(a)'s "custody" requirement; a postconviction petition will not be mooted by a defendant's completion of their sentence after the petition is filed if the defendant pleads that there are continuing collateral consequences arising from the conviction.

## B. Martin met his burden of demonstrating that the collateral consequences of his conviction should preclude dismissal on the basis of mootness.

Having been unconditionally pardoned for all his previous convictions, Martin's convictions in this case subjected him to collateral consequences, which he adequately articulated to the Superior Court after remand. Although the Superior Court's Remand Order drew a distinction between first-time felons and unconditionally pardoned felons based on the "public memory of the offense,"[76] the fact that a pardon does not "erase guilt"[77] does not address whether a convicted felon suffers collateral consequences from the conviction. Notably, the State conceded on remand that Martin's unconditional pardon placed him in the same position as a

---

[75] *See, e.g. Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (Once a defendant's "sentence has expired, however, some concrete and continuing injury other than the now-ended incarceration or parole—some 'collateral consequence' of the conviction—must exist if the suit is to be maintained."); *Sibron v. New York*, 392 U.S. 40, 55–56 (1968); *United States v. Kissinger*, 309 F.3d 179, 181 (3d Cir. 2002) ("once a litigant is unconditionally released from a criminal confinement, the litigant must prove that he or she suffers a continuing injury from the collateral consequences attaching to the challenged act.").

[76] *State v. Martin*, 2022 WL 17244558, at *8.

[77] *See State v. Skinner*, 632 A.2d 82, 85 (Del. 1993).

person convicted of their first felony offense.[78]  It is undisputed that after his pardon, and before his conviction for the challenged offenses, Martin was not subjected to the various legal burdens associated with a felony conviction, including prohibitions on the right to hold public office, serve as a juror, and own or possess a deadly weapon.  Martin also could apply for jobs without concern that a criminal background check would bar his employment.

The State contends on appeal that Martin needed to make a more "particularized" showing of collateral consequences that were personally significant to him.[79]  The State does not convincingly explain how a defendant could prove why he was denied employment or was not selected for (or called for) jury service.  More importantly, however, this argument is contrary to the trend in state and federal jurisdictions, which increasingly presume that collateral consequences arise as a result of a felony conviction.[80]  By providing evidence that he was unconditionally pardoned for all his felony convictions before he was charged and convicted in this

---

[78] App. to Supp. Opening Br. at A509; State's Supp. Answering. Br. at 44.

[79] State's Supp. Answering Br. at 42 (arguing Martin did not offer "evidentiary support" that he has applied for employment or student loans and been denied due to his conviction); *id.* at 42–43 (arguing Martin did not "claim to have pursued jury service and been denied" or show any "intent or desire to serve on a jury in the future.").

[80] *See, e.g., Spencer*, 523 U.S. at 8 ("In recent decades, we have been willing to presume that a wrongful criminal conviction has continuing collateral consequences (or, what is effectively the same, to count collateral consequences that are remote and unlikely to occur.")) (citing *Sibron*, 392 U.S. at 55–56); *Martinez-Hernandez*, 380 P.3d at 864–65 ("there is a presumption that continuing collateral consequences exist whenever there is a criminal conviction."); *State v. Jordan*, 716 A.2d 1004, 1007 (Me. 1998) ("We have recognized that *Sibron* 'abandon[s] all inquiry into the actual existence of specific collateral consequences resulting from convictions of crime and in effect presume[s] that they exist.'").

29

case, and by identifying the consequences associated with a felony conviction in Delaware, Martin met his burden of establishing the collateral consequences exception to mootness.

## IV. CONCLUSION

For the foregoing reasons, the Superior Court erred in dismissing Martin's postconviction motion as moot because the collateral consequences of his conviction operate as an exception to the mootness doctrine. We therefore REVERSE and REMAND this case for further proceedings on Martin's motion. Jurisdiction is not retained.